[No. 78377-2.   En Banc.]
Argued March 1, 2007.     Decided August 30, 2007.

THE STATE OF WASHINGTON, *Respondent*, v. BRUCE L. BENNETT, JR., *Petitioner*.

---

[24] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

304

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for petitioner.

*Deborah S. Kelly, Prosecuting Attorney,* and *Carol L. Case, Deputy,* for respondent.

¶1 CHAMBERS, J. — This is a case of first impression for this court. Bennett was convicted of attempted first degree

escape. RCW 9A.76.110. He argues that the burden of proof instruction given, commonly referred to as the *Castle* instruction,[1] violated his constitutional right to due process. We decline his invitation to hold that the *Castle* instruction violates minimum constitutional standards, and we affirm his conviction. We also exercise our inherent supervisory powers to maintain sound judicial practice and instruct the trial courts of this State to use the approved Washington Pattern Jury Instruction[2] to instruct juries on the government's burden to prove each element of the crime beyond a reasonable doubt.

I

¶2 Bennett was charged with and tried for attempted first degree escape. After both parties rested, the court and counsel debated a variety of instructions. Much of this debate revolved around the State's proposed instruction defining reasonable doubt. Bennett proposed the standard *Washington Pattern Jury Instruction* 4.01. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 79 (2d ed. Supp. 2005) (WPIC). Over Bennett's objection, the State successfully proposed, and the jury was read, what has come to be known as the *Castle* instruction.

¶3 The jury found Bennett guilty. The Court of Appeals affirmed and we accepted review. *State v. Bennett*, 131 Wn. App. 319, 126 P.3d 836 (2006); *State v. Bennett*, 158 Wn.2d 1010, 2006 Wash. LEXIS 842. Without citing any particular constitutional provisions, Bennett argues that the trial court's instruction violated the constitution. He relies upon cases explaining how reasonable doubt instructions that diminish the State's burden of proof violate the due process clause of the Fourteenth Amendment to our federal constitution. *E.g., Victor v. Nebraska*, 511 U.S. 1, 5-6, 114 S. Ct.

---

[1] The instruction is named for the first Washington case in which it appeared. *State v. Castle*, 86 Wn. App. 48, 935 P.2d 656 (1997).

[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 79 (2d ed. Supp. 2005) (WPIC).

1239, 127 L. Ed. 2d 583 (1994); *Cage v. Louisiana*, 498 U.S. 39, 39-40, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990); *State v. McHenry*, 88 Wn.2d 211, 214, 558 P.2d 188 (1977) (quoting *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)).

## II

¶4 Instructions must convey to the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable doubt. *Victor*, 511 U.S. at 5-6. Although no specific wording is required, jury instructions must define reasonable doubt and clearly communicate that the State carries the burden of proof. *State v. Coe*, 101 Wn.2d 772, 787-88, 684 P.2d 668 (1984). Instructions must also properly inform the jury of the applicable law, not mislead the jury, and permit each party to argue its theory of the case. *State v. LeFaber*, 128 Wn.2d 896, 903, 913 P.2d 369 (1996). It is not error to refuse to give a specific instruction when a more general instruction adequately explains the law and allows each party to argue its theory of the case. *State v. Schulze*, 116 Wn.2d 154, 168, 804 P.2d 566 (1991). It is reversible error to instruct the jury in a manner relieving the State of its burden to prove every element of a crime beyond a reasonable doubt. *Sullivan v. Louisiana*, 508 U.S. 275, 280-81, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993). A challenged jury instruction is reviewed de novo, in the context of the instructions as a whole. *State v. Brett*, 126 Wn.2d 136, 171, 892 P.2d 29 (1995) (citing *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993)).

¶5 Washington has adopted pattern jury instructions to assist trial courts. Our pattern instructions are drafted and approved by a committee that includes judges, law professors, and practicing attorneys. Just because an instruction is approved by the Washington Pattern Jury Instructions Committee does not necessarily mean that it is approved by this court. *E.g.*, *State v. Studd*, 137 Wn.2d 533, 546, 973 P.2d 1049 (1999).

¶6 However, pattern instructions generally have the advantage of thoughtful adoption and provide some uniformity in instructions throughout the state. The Washington Pattern Jury Instruction Committee drafted WPIC 4.01 as an abbreviated form of the instruction used in *State v. Tanzymore*, 54 Wn.2d 290, 340 P.2d 178 (1959).[3] In *Tanzymore*, written almost half a century ago, we observed, "[t]his instruction has been accepted as a correct statement of the law for so many years, we find the assignment [of error criticizing the instruction] without merit." *Id.* at 291. WPIC 4.01 is sometimes referred to as the "abiding belief" instruction and reads as follows:

[The] [Each] defendant has entered a plea of not guilty. That plea puts in issue every element of [the] [each] crime charged. The [State] [City] [County] is the plaintiff and has the burden of proving each element of [the] [each] crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists [as to these elements].

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. [If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.]

---

[3] The WPIC adopted, from *Tanzymore,* the definition of "reasonable doubt" as " 'a doubt as exists in the mind of a reasonable man after he has fully, fairly, and carefully compared and considered all of the evidence or lack of evidence.' " *Compare Tanzymore,* 54 Wn.2d at 291 n.2 (quoting jury instruction given in that case) *with* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL, 4.01 cmt. at 66 (2d ed. 1994). Although the committee replaced "conviction" with "belief," it retained the following explanation: "If . . . you can say you have an abiding [belief] of the truth of the charge, you are satisfied beyond a reasonable doubt." *Id.*

WPIC 4.01, at 79 (2d ed. Supp. 2005) (alterations in origi-nal).[4] WPIC 4.01 has been approved by several courts. *See State v. Pirtle*, 127 Wn.2d 628, 656-58, 904 P.2d 245 (1995); *State v. Lane*, 56 Wn. App. 286, 299-301, 786 P.2d 277 (1989); *State v. Mabry*, 51 Wn. App. 24, 25, 751 P.2d 882 (1988); *State v. Price*, 33 Wn. App. 472, 475-76, 655 P.2d 1191 (1982).

¶7 Bennett urged the court, at his trial, to use WPIC 4.01. The court did not and instead, over Bennett's objec-tion, gave the following instruction based on *Castle*:

> The Defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.
>
> A Defendant is presumed innocent. This presumption con-tinues throughout the entire trial unless during your delibera-tions you find it has been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes *every possible doubt*. If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a *real possibility* that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Clerk's Papers at 27 (Jury Instruction 3) (emphasis added). The instruction given in Bennett's case may find its origin in a United States Supreme Court case, *Victor*, 511 U.S. 1. In *Victor*, the Supreme Court examined jury instructions

---

[4] In 1986, the committee added WPIC 4.01A to provide an alternative simplified definition. The primary difference in the two instructions is that WPIC 4.01 included the abiding belief sentence, which WPIC 4.01A did not. Later, the two were combined with the abiding belief language bracketed.

from two states, California and Nebraska,[5] and approved both. The California instruction reviewed by the court read:

"A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt.

"Reasonable doubt is defined as follows: It is *not a mere possible doubt;* because everything relating to human affairs, and *depending on moral evidence*, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge."

*Victor*, 511 U.S. at 7. The Court examined the use of the phrase "moral certainty," concluding it was not "reasonably likely that the jury understood the words 'moral certainty' either as suggesting a standard of proof lower than due process requires or as allowing conviction on factors other than the government's proof." *Id.* at 16. The Court observed that any ambiguity in the phrase "moral certainty" was clarified because "the rest of the instruction given in Sandoval's case lends content to the phrase." *Id.* at 14. The Court observed that the phrase "abiding conviction" informed jurors they must develop a belief beyond a reasonable doubt before convicting the defendant. *Id.* at 15-16. Further, "the instruction itself gives a definition of the phrase ["moral certainty"]. The jury was told that 'everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt.'" *Id.* at 13.

¶8 Sandoval challenged this definition, arguing, as Bennett now argues, that the phrase "possible doubt"

---

[5] The Supreme Court consolidated *People v. Sandoval*, 4 Cal. 4th 155, 841 P.2d 862, 14 Cal. Rptr. 2d 342 (1992) and *State v. Victor*, 235 Neb. 770, 457 N.W.2d 431 (1990).

lowered the standard of proof below a reasonable doubt. The Court rejected this argument, noting that a " 'reasonable doubt, at a minimum, is one based upon reason.' A fanciful doubt is not a reasonable doubt." *Victor*, 511 U.S. at 17 (internal quotation marks omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). The Court observed that in the "only" case to hold that a definition of "reasonable doubt" violated due process, *Cage*, the "possible doubt" language was not criticized.[6] *Victor*, 511 U.S. at 5, 17 ("[t]he *Cage* instruction included an almost identical reference to 'not a mere possible doubt,' but we did not intimate that there was anything wrong with that part of the charge" (citing *Cage*, 498 U.S. at 40)).

¶9 The court then turned to the instructions given in the Nebraska case, which read:

> " 'Reasonable doubt' is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, *to a moral certainty*, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the *strong probabilities of the case*, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* reasonably arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the State, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture."

---

[6] In *Cage,* the Court reviewed instructions which stated that a reasonable doubt must be " '*an actual substantial doubt . . . as would give rise to a grave uncertainty.*' " *Cage*, 498 U.S. at 40. The Court held that "the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard." *Id*. at 41.

*Victor*, 511 U.S. at 18. Victor argued the instruction impermissibly equated "reasonable" with "substantial" doubt, but the Court disagreed. "Any ambiguity, however, is removed by reading the phrase in the context of the sentence in which it appears: 'A reasonable doubt is an actual and substantial doubt . . . *as distinguished from* a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.' " *Id*. at 20 (alteration in original). Victor also objected to the use of "moral certainty," but the Court was not persuaded, noting that the rest of the instruction provided adequate context to clarify the meaning of the phrase. *Id*. at 21. Finally, Victor objected to characterizing the government's burden of proof as " 'strong probabilities.' " *Id*. at 22. The Court rejected the argument, explaining that the instruction required " 'strong probabilities' " that were "strong enough to prove the defendant's guilt beyond a reasonable doubt." *Id*.

¶10 The majority in *Victor*, commenting that they do not "condone the use of the phrase [moral certainty]," cited the federal pattern instructions for guidance and observed that these model instructions do not contain the phrase "moral certainty." *Id*. at 16-17 (citing FED. JUDICIAL CTR., PATTERN CRIMINAL JURY INSTRUCTIONS 28 (1988); 1 EDWARD J. DEVITT & CHARLES B. BLACKMAR, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 11.14 (3d ed. 1977)). Justice Ginsburg's concurrence explicitly endorsed the Federal Pattern Criminal Jury Instructions. *Victor*, 511 U.S. at 26 (Ginsburg, J., concurring). She observed that this instruction "surpasses others I have seen in stating the reasonable doubt standard succinctly and comprehensibly." *Id*. at 27 (Ginsburg, J., concurring). The pattern instruction reads:

"[T]he government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases, where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few

things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

*Id.* (alteration in original) (quoting FED. JUDICIAL CTR., PATTERN CRIMINAL JURY INSTRUCTIONS 17-18 (Instruction 21)). Not more than three years later, Division One of our Court of Appeals examined an almost identical instruction in *Castle*, 86 Wn. App. 48. The only differences between the federal pattern instruction and the *Castle* instruction were in the preamble to the definition. The *Castle* instruction reads in full:

"The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt.

"A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

"Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

*Id.* at 53. Division One of the Court of Appeals upheld the instruction as an adequate way of explaining reasonable doubt. *Id.* at 62. The court held the language appropriately differentiated among doubts: "The 'real possibility' language distinguishes reasonable from unfounded doubt. . . .

[A] 'real possibility' is a genuine possibility, as opposed to an imaginary or conjectural one." *Id.* at 58 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1890 (1976)).[7] Citing *Victor* and eight federal circuits,[8] the *Castle* court found that "[c]ourts considering the 'real possibility' phrase have uniformly upheld the instruction." *Id.* at 57. The court held the instruction was constitutional.[9] *Id.* at 58.

¶11 Following *Castle*, the Washington Pattern Jury Instruction Committee acknowledged the instruction, calling it the *Castle* instruction. *See* WPIC 4.01 cmt. at 82 (2d ed. Supp. 2005). The committee approved the *Castle* instruction without much comment, though the committee observed that the Court of Appeals had approved this definition and said "[t]he *Castle* definition may be substituted for the third paragraph of WPIC 4.01, above." *Id.* The "above" definition the comments refer to is the primary instruction. In July 2005, Division Three of the Court of Appeals reviewed this instruction and approved its use. *State v. Hunt*, 128 Wn. App. 535, 116 P.3d 450 (2005). The *Hunt* court noted that "the 'real possibility' language serves to distinguish a 'genuine possibility' from an 'imaginary or conjectural one.' " *Id.* at 540 (quoting *Castle*, 86 Wn. App. at

---

[7] The court did not address the "every possible doubt" language ("the law does not require proof that overcomes every possible doubt") in the instruction as it was not argued by the appellant. However, the same reasoning applies with greater force: the instruction distinguishes unreasonable from reasonable doubts. This language does no more than indicate that some doubts may be unreasonable.

[8] *United States v. Taylor*, 302 U.S. App. D.C. 349, 997 F.2d 1551 (1993); *United States v. Velasquez*, 980 F.2d 1275, 1278-79 (9th Cir. 1992); *United States v. Barrera-Gonzales*, 952 F.2d 1269, 1273 (10th Cir. 1992); *United States v. Hall*, 854 F.2d 1036, 1038-39 (7th Cir. 1988); *United States v. Porter*, 821 F.2d 968, 973 (4th Cir. 1987); *United States v. McBride*, 786 F.2d 45, 52 (2d Cir. 1986); *United States v. Hunt*, 794 F.2d 1095, 1100 n.4, 1101 (5th Cir. 1986); *United States v. Gibson*, 726 F.2d 869, 874 (1st Cir. 1984).

[9] Their endorsement was far from exuberant. They held that the instruction is constitutional, though not necessarily helpful. *Castle*, 86 Wn. App. at 58 ("Whether this instruction is clearer for jurors than the standard instruction is a matter for debate, but we see no constitutional flaw in the instruction given here."). Judge Agid expressed greater enthusiasm for the instruction. In her concurrence she wrote that the instruction is, "far more helpful to the jury and thus preferable to either of the standard WPIC instructions." *Id.* at 62-63 (Agid, J., concurring).

58.) Finally Division Two, in the current case under review, agreed with the reasoning in *Castle* and concluded the instruction "did not relieve the State of its burden of proof." *Bennett*, 131 Wn. App. at 328. In short, every division of our Court of Appeals has reviewed this instruction and concluded it properly defines the standard of proof.

¶12 Bennett, however, urges us to invalidate the instruction. He argues that the phrases "real possibility" and "every possible doubt" are not inherently prejudicial but become so if the other words in the instruction fail to clarify their meaning. He cites *Victor*, 511 U.S. 1, for this proposition. While Bennett is correct that the Court in *Victor* examined how context can salvage otherwise ambiguous terms, the phrase "possible doubt" was not found to be ambiguous. *Victor*, 511 U.S. at 14-16. Bennett mistakenly claims the Supreme Court's approval of the "possible doubt" language was conditional on "the trial court's equation of 'possible doubt' with 'imaginary doubt.'" Suppl. Br. of Pet'r at 2 (citing *Victor*, 511 U.S. at 17). The Supreme Court noted that the instruction's comparison of "possible" to imaginary "made clear" the "sense in which the instruction uses 'possible,'" but did hold that this clarification was necessary. *Victor*, 511 U.S. at 17. The Court's approval of the possible doubt language in *Cage*, which did not include a comparison to imaginary doubt, indicates such a comparison is not required to satisfy due process. *Cage*, 498 U.S. at 40-41.

¶13 Thus we conclude, as have other courts, that the *Castle* instruction satisfies the constitutional requirements of the due process clause of the United States Constitution. However, this court has never placed its stamp of approval on the *Castle* instruction. While the instruction may meet constitutional muster, it does not mean that it is a good or even desirable instruction. Although we conclude that the *Castle* instruction is constitutionally adequate, we do not endorse the instruction.

¶14 The presumption of innocence is the bedrock upon which the criminal justice system stands. The reason-

able doubt instruction defines the presumption of innocence. The presumption of innocence can be diluted and even washed away if reasonable doubt is defined so as to be illusive or too difficult to achieve. This court, as guardians of all constitutional protections, is vigilant to protect the presumption of innocence. While the *Castle* instruction certainly has its supporters, we find that many who have considered the issues have been, like this court, less than enthusiastic about the instruction.

¶15 Although the exact words in the *Victor* and *Sandoval*[10] instructions were different, those instructions were found permissible by the Supreme Court, and it is that approval upon which the State relies. We note that in *Victor*, Justice Blackmun observed that "a central purpose of the instruction is to minimize the jury's sense of responsibility for the conviction of those who may be innocent." *Victor*, 511 U.S. at 35 (Blackmun, J., dissenting). "Viewed as a whole, the instruction is geared toward assuring jurors that although they may be mistaken, they are to make their decision on those 'strong probabilities,' and only a 'substantial doubt' of a defendant's guilt should deter them from convicting." *Id.*

¶16 Justice O'Connor, writing for the majority in *Victor*, approved the instruction but observed, "Victor's primary argument is that equating a reasonable doubt with a 'substantial doubt' overstated the degree of doubt necessary for acquittal. We agree that this construction is somewhat problematic." *Id.* at 19. The majority of the United States Supreme Court was not enthusiastic about the phrase "moral certainty" but observed, "we have no supervisory power over the state courts, and in the context of the instructions as a whole we cannot say that the use of the phrase rendered the instruction given in Sandoval's case unconstitutional." *Id.* at 17.

¶17 Similarly, the Court of Appeals that approved the *Castle* instruction was far from exuberant. They held that the instruction is constitutional, though not necessarily helpful. *Castle*, 86 Wn. App. at 58. "Whether this instruc-

---

[10] *People v. Sandoval*, 4 Cal. 4th 155, 841 P.2d 862, 14 Cal. Rptr. 2d 343 (1992).

tion is clearer for jurors than the standard instruction is a matter for debate, but we see no constitutional flaw in the instruction given here." *Id.*

¶18 We also find the language problematic. First, the instruction emphasizes what the State need not prove, instead of describing the State's burden of proof. Second, every reasonable doubt is a possible doubt. The *Castle* instruction does not enhance the clarity of the reasonable doubt instructions. It is not an improvement upon the approved WPIC 4.01.

¶19 We have approved WPIC 4.01 and concluded that it adequately permits both the government and the accused to argue their theories of the case. *Pirtle*, 127 Wn.2d at 656-58. We recognize that the concept of reasonable doubt seems at times difficult to define and explain. We understand the temptation to expand upon the definition of reasonable doubt, particularly where very creative defenses are raised. But every effort to improve or enhance the standard approved instruction necessarily introduces new concepts, undefined terms, and shifts, perhaps ever so slightly, the emphasis of the instruction. Like the Supreme Court in *Victor*, we are confronted with a reasonable doubt instruction which we find problematic. Unlike the United States Supreme Court, we do have supervisory powers over our State's courts. *State v. Fields*, 85 Wn.2d 126, 129, 530 P.2d 284 (1975) (citing *State ex rel. Foster-Wyman Lumber Co. v. Superior Court*, 148 Wash. 1, 267 P. 770 (1928)).[11] Even if many variations of the definition of reasonable doubt meet minimal due process requirements, the presumption of

---

[11] The United States Supreme Court has, from the beginning of its history, exercised supervisory power over lower federal courts. *See, e.g., McNabb v. United States*, 318 U.S. 332, 340, 63 S. Ct. 608, 87 L. Ed. 819 (1943). Citing its supervisory powers, the Court often requires lower courts to "follow procedures deemed desirable from the viewpoint of sound judicial practice although in nowise commanded by statute or by the Constitution." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973). This court has the inherent power to prescribe rules of procedure and practice. *State v. Templeton*, 148 Wn.2d 193, 212, 59 P.3d 632 (2002). This stems from the constitutional provision that all judicial power of the State is vested in the Supreme Court and the various other courts designated in the constitution. CONST. art. IV, § 1; *Fields*, 85 Wn.2d at 129; *State v. Bonds*, 98 Wn.2d 1, 13, 653 P.2d 1024 (1982).

innocence is simply too fundamental, too central to the core of the foundation of our justice system not to require adherence to a clear, simple, accepted, and uniform instruction. We therefore exercise our inherent supervisory power to instruct Washington trial courts not to use the *Castle* instruction. We have approved WPIC 4.01 and conclude that sound judicial practice requires that this instruction be given until a better instruction is approved. Trial courts are instructed to use the WPIC 4.01 instruction to inform the jury of the government's burden to prove every element of the charged crime beyond a reasonable doubt.

## III

¶20 We conclude the *Castle* instruction given in Bennett's case satisfied the minimum requirements of due process. The State was not relieved of its burden to prove every element beyond a reasonable doubt. We affirm the Court of Appeals. We also exercise our inherent supervisory power to instruct Washington trial courts to use only the approved pattern instruction WPIC 4.01 to instruct juries that the government has the burden of proving every element of the crime beyond a reasonable doubt.

BRIDGE, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶21 SANDERS, J. (dissenting) — Despite forbidding our trial courts from using the *Castle*[12] instruction to define "reasonable doubt," the majority incongruously affirms Bruce Bennett's conviction, claiming the deficient instruction did not violate his due process rights. I disagree. If a reasonable doubt instruction is so lacking in its description of the burden of proof that we disavow its use, then surely we cannot be convinced the jury properly understood the concept of reasonable doubt. Without that assurance, we must reverse Bennett's conviction and remand for a new trial with a properly instructed jury.

---

[12] *State v. Castle*, 86 Wn. App. 48, 935 P.2d 656 (1997).

¶22 The presumption of innocence is the most funda-
mental aspect of our criminal justice system. This presump-
tion cannot be overcome unless the State proves beyond a
reasonable doubt a defendant is guilty. But reasonable
doubt is an esoteric concept, not always well understood by
lawyers and judges, let alone by a lay jury, without compe-
tent instruction. The United States Supreme Court recog-
nizes the integral importance of reasonable doubt and has
held if the State is relieved of its burden because the court
failed to properly instruct as to reasonable doubt, then this
is structural error and requires reversal. *Sullivan v. Loui-
siana*, 508 U.S. 275, 280-81, 113 S. Ct. 2078, 124 L. Ed. 2d
182 (1993). Without assurance the jury properly understood
the burden of proof, the entire framework of the trial is
affected:

> But the essential connection to a "beyond a reasonable doubt"
> factual finding cannot be made where the instructional error
> consists of a misdescription of the burden of proof, which
> vitiates *all* the jury's findings. A reviewing court can only
> engage in pure speculation—its view of what a reasonable jury
> would have done. And when it does that, "the wrong entity
> judge[s] the defendant guilty."

*Id*. at 281 (alteration in original) (quoting *Rose v. Clark*, 478
U.S. 570, 578, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986)).

¶23 Our pattern jury instruction is clear: " 'A reasonable
doubt is one for which a reason exists and may arise from
the evidence or lack of evidence. It is such a doubt as would
exist in the mind of a reasonable person after fully, fairly,
and carefully considering all of the evidence or lack of
evidence.' " Majority at 308 (quoting 11 WASHINGTON PRAC-
TICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at
79 (2d ed. Supp. 2005). The *Castle* instruction begins in a
similar fashion but then adds additional qualifiers that
clearly lower the State's burden:

> "There are very few things in this world that we know with
> absolute certainty, and in criminal cases the law does not
> require proof that overcomes every possible doubt. If, based on

your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

Majority at 309 (quoting Clerk's Papers at 27) (emphasis omitted). This instruction clearly suggests a lower standard than our pattern jury instruction. Here the trial court discussed how the State did not have to overcome "every possible doubt" or, most distressing, how a juror must think there is a "real possibility" the defendant is not guilty in order to have reasonable doubt. This instruction lowers the standard of proof from any "doubt as would exist in the mind of a reasonable person" to a "real possibility" Bennett was not guilty.

¶24 The majority relies on a United States Supreme Court case to claim the instruction is not constitutionally deficient. Majority at 317. But while the instructions given in *Victor v. Nebraska,* 511 U.S. 1, 16, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994), were similar, the Court was careful to note any ambiguities were cured because of the context of the instruction as a whole. Concerned about whether the jury would misunderstand the phrases "moral certainty" and "moral evidence," the Court said, "[b]ut the moral certainty language cannot be sequestered from its surroundings. . . . The instruction thus explicitly told the jurors that their conclusion had to be based on the evidence in the case. Other instructions reinforced this message." *Id.*; *see id.* at 5 (noting " 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury' " (alterations in original) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S. Ct. 127, 99 L. Ed. 150 (1954))); *id.* at 20 ("Any ambiguity, however, is removed by reading the phrase in the context of the sentence in which it appears . . . ."). Here, there is no curative context to save Bennett's instruction. The inappropriate language was not clarified by another part of the instruction; the jury could not be expected to develop a better understanding of rea-

sonable doubt when the entire explanatory portion of the instruction was faulty.

¶25 Rather, the facts before us are more similar to *Cage v. Louisiana* where "jurors were simply told that they had to be morally certain of the defendant's guilt; there was nothing else in the instruction to lend meaning to the phrase." *Victor*, 511 U.S. at 16 (discussing the Court's holding in *Cage v. Louisiana*, 498 U.S. 39, 41, 111 S. Ct. 328, 112 L. Ed. 2d 339 (1990) (per curiam)). In *Cage*, the Court held:

> It is plain to us that the words "substantial" and "grave," as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable-doubt standard. . . . [I]t [is] clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.

*Cage*, 498 U.S. at 41. Here too it is plain that telling a jury they must find a "real possibility" Bennett is not guilty suggests a higher degree of doubt than is required for acquittal under the reasonable doubt standard. And unlike the instruction in *Victor*, these sentences form the bulwark of the instruction; no other explanations or clarifications were rendered. In other words, we cannot look to the instruction's context because these ambiguous and misleading statements are the instruction's context—in its entirety.

¶26 The majority both recognizes the fault of this instruction and the immense import of the reasonable doubt standard.

> The presumption of innocence is the bedrock upon which the criminal justice system stands. The reasonable doubt instruction defines the presumption of innocence. The presumption of innocence can be diluted and even washed away if reasonable doubt is defined so as to be illusive or too difficult to achieve.

Majority at 315-16. But the majority fails to apply these eloquent words to reach a just result. Despite admitting this instruction is "problematic" and exercising its supervi-

sory power not to use the *Castle* instruction, *id.* at 317, the majority somehow holds the *Castle* instruction still meets Bennett's minimum due process rights. Specifically the majority says, "While the instruction may meet constitutional muster, it does not mean that it is a good or even desirable instruction." *Id.* at 315. But in the context of a criminal trial, passing constitutional muster must be synonymous with a reasonable doubt instruction that both correctly and clearly explains the concept. Anything less than that and we cannot be sure the jury properly understood or applied the right standard, and therefore we cannot be sure the presumption of innocence, "the bedrock upon which the criminal justice system stands," was overcome. Majority at 315.

¶27 "[T]he presumption of innocence is simply too fundamental, too central to the core of the foundation of our justice system not to require adherence to a clear, simple, accepted, and uniform instruction." *Id.* at 317-18. Clearly, the *Castle* instruction given at Bennett's trial was not such an instruction. It lowered the State's burden of proof by equating a reasonable doubt with a "real possibility" of innocence. Because of the gravity of the proceeding and the importance of our reasonable doubt standard, Bennett's conviction should be reversed.

¶28 I dissent.

ALEXANDER, C.J., and C. JOHNSON and MADSEN, JJ., concur with SANDERS, J.