FILED
COURT OF APPEALS
DIVISION II

2015 FEB -3 AM 8: 50

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44453-4-II |
| Respondent, | |
| v. | |
| BRIAN G. HOLLOWAY, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Brian G. Holloway appeals his 11 convictions for multiple charges and degrees of child rape, child molestation, and incest. He argues that (1) the trial court violated his Sixth Amendment right to a fair trial, to present a defense, and to cross-examine witnesses; (2) the State failed to prove second and third degree child rape (counts IV and VIII); (3) the trial court and the State's closing argument misstated the burden of proof; and (4) the sentences for three of his convictions exceed the statutory maximum. We hold that (1) the trial court did not violate Holloway's Sixth Amendment right by excluding evidence of G.S.R.'s[1] prior recantation as irrelevant for impeachment under ER 608(b), (2) the State presented sufficient evidence to support the jury's guilty verdicts on counts IV and VIII, (3) the trial court's jury instruction and the State's closing did not misstate the burden of proof as neither were improper, and (4) the trial court imposed a sentence that exceeds the statutory maximum for counts II, III and X. We affirm Holloway's convictions, but remand to amend the community custody terms on counts II, III, and

---

[1] We use initials in the opinion to protect the confidentiality of the juvenile involved.

X so that the total concurrent sentences for each of these counts does not exceed the statutory maximum.

## FACTS

### I. G.S.R.'S PRIOR ALLEGATION AND HOLLOWAY'S ABUSE

When G.S.R. was seven years old and living with her biological mother in Montana, G.S.R. disclosed that her biological mother's boyfriend's brother had touched her vagina over her clothes while she was sleeping. The police department in Montana investigated before deciding not to pursue the case because G.S.R. "recanted," lacked clarity, and made conflicting statements about the incident. Sealed Clerk's Papers (SCP) at 233.

In 2007 when she was 10 years old, G.S.R. began living with her father, Brian Holloway, and her stepmother, Stephanie Phelps.[2] Shortly after G.S.R. came to live with him, Holloway began touching G.S.R. "in a way that was not good." 3 Verbatim Report of Proceedings (VRP) at 337. Holloway used his hand to touch G.S.R.'s bare butt, breasts, and vagina "fifty or more . . . times." 3 VRP at 361. The touching happened "[a] lot" and "at least once a month." 3 VRP at 337.

After an incident on or about July 4, 2011, G.S.R. became afraid that Holloway had impregnated her. G.S.R. disclosed the incident to Stephanie and, with the aid of counseling, she

---

[2] We will refer to Stephanie Phelps (previously known as Stephanie Holloway) by her first name for clarity. We mean no disrespect.

disclosed the full extent of Holloway's abuse to the police.[3] The State charged Holloway with 11 offenses: (1) first degree child molestation (count I), (2) second degree child molestation (counts II and III), (3) second degree child rape (counts IV and V), (4) third degree child molestation (counts VI and VII), (5) third degree child rape (counts VIII and IX), (6) first degree incest (count X), and (7) second degree incest (count XI).[4]

## II. TRIAL

### A. Motions in Limine to Admit Evidence of G.S.R.'s Recanted Allegation of Abuse

On the eve of trial, G.S.R.'s biological mother told Holloway's counsel about G.S.R.'s prior allegation and recantation. The trial court granted Holloway's motion to continue the trial so that Holloway could investigate the issue. Subsequently, the trial court reviewed in camera sealed records relating to G.S.R.'s prior allegation and the police report stating that G.S.R. recanted her allegation.

At trial, Holloway moved to admit evidence of G.S.R.'s prior recanted allegation. Holloway argued that in order to present a defense the trial court must allow him to cross-examine G.S.R. about the recanted allegation and to ask Stephanie whether she had coached G.S.R. to lie. The trial court ruled that (1) the rape shield statute, RCW 9A.44.020, barred evidence of G.S.R's

---

[3] The State first charged Holloway with only 1 count each of 4 crimes based on G.S.R.'s initial limited disclosure: (1) Second degree child molestation, (2) third degree child rape, (3) first degree incest, and (4) second degree incest. After G.S.R.'s full disclosure, the State amended its information, bringing the total crimes charged to 11, as detailed above.

[4] The State also charged Holloway with two aggravating factors on each charge, totaling 22 aggravating factors: (1) The offense was part of an ongoing pattern of sexual abuse of the same victim under the age of 18 years and (2) Holloway used his position of trust or confidence to facilitate the commission of the offenses.

prior recantation and (2) this evidence was irrelevant for impeachment under ER 608(b). The trial court ruled that Holloway could not cross-examine either G.S.R. or Stephanie about the prior recanted allegation.

## B. G.S.R.'s Trial Testimony

GSR testified about multiple instances of abuse by Holloway. Holloway testified that he never touched G.S.R. inappropriately.

### 1. Count IV – Second degree child rape

G.S.R. testified that Holloway touched her when she had a red, brown, and yellow plaid blanket on the bed when she was in the fifth grade. She said that his hand was on the skin of her vagina and "in between it." 3 VRP at 348. When asked to clarify what she meant, she said:

| | |
|---|---|
| [G.S.R.]: | I don't want to say it. |
| [STATE]: | Did his [Holloway's] finger go inside you? |
| [G.S.R.]: | Not that I recall, but it was almost. |
| [STATE]: | And so when you say in between it, do you mean in between— |
| [G.S.R.]: | In the— |
| [STATE]: | —the folds of your vagina? |
| [G.S.R.]: | Yes. |

3 VRP at 348-49. The State used this portion of G.S.R.'s testimony during its closing to argue it proved count IV, second degree child rape, beyond a reasonable doubt.

### 2. Count VIII – Third degree child rape

G.S.R. also testified that Holloway touched her when she had a new lava lamp and daybed in her room. She testified that Holloway "was touching the inside—the—touching the in-crease of my vagina and rubbing it." 3 VRP at 360. The State used this portion of G.S.R's testimony during its closing to argue it proved count VIII, third degree child rape, beyond a reasonable doubt.

C. Reasonable Doubt Instruction and Closing Argument

Both parties proposed a reasonable doubt instruction based on 11 *Washington Practice*: *Washington Pattern Jury Instructions*: *Criminal* 4.01, at 85 (3d ed. 2008) (WPIC 4.01). The versions were identical except the State's proposed instruction included the optional "abiding belief" language in WPIC 4.01, which read: "If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." CP at 106. The trial court's instructions to the jury included the abiding belief language over Holloway's objection. The trial court commented that she always includes this optional sentence in the reasonable doubt instruction because this language mirrors her initial oral instructions to the jury at the start of the trial. 4A VRP at 572.

In its closing, the State discussed how and why the jury should evaluate and find G.S.R.'s testimony credible. The State first discussed each count against Holloway, detailing the points of testimony supporting each count. The State then explained the reasonable doubt instruction and said that "it comes down to if you have an abiding belief in the truth of the charge. The law allows you to convict based on the word of a child." 4B VRP at 641. The State urged the jury to convict Holloway based on the truth of G.S.R.'s testimony over Holloway's testimony, saying, "[I]f you sit there in that room, . . . and you say, 'I believe [G.S.R.]. I believe in the truth of what she is saying. I have that abiding belief, a belief that lasts, that I know that this happened to that poor little girl,' then you must convict [Holloway]." 4B VRP at 650. The State argued that even though this was a case of "[h]e said, [she] said," the jury could look to corroborating evidence in the testimony of the other witnesses and also use their "gut" and "personal opinions" when deciding who to believe. 4B VRP at 643. "If you believe [G.S.R.], then [the State] met that burden of

No. 44453-4-II

[proof] beyond a reasonable doubt." 4B VRP at 643-44. In rebuttal, the State asked the jury to review the evidence and find Holloway guilty based on the evidence at trial, telling the jury to "know what you know in your mind, in your hearts, in every part of you, that that man [Holloway] is very guilty of what he did to that little girl[ G.S.R.]." 4B VRP at 702-03. The jury returned guilty verdicts on all 11 counts and all 22 aggravating factors.

### III. SENTENCING

The trial court sentenced Holloway to 116 months on each count of second degree child molestation (counts II and III) and to 102 months for first degree incest (count X); these sentences were to be served concurrently with the sentences on the other eight counts.[5] The trial court also imposed 36 months of community custody for counts II, III and X. The statutory maximum allowed for counts II, III, and X is 120 months. Holloway appeals.

### ANALYSIS

### I. ADMISSIBILITY OF RECANTATION EVIDENCE

Every criminal defendant has the right to a fair trial, to confront the State's witnesses, and to present a defense under the Washington and federal constitutions. WASH. CONST. art. I, § 22; U.S. CONST. amend. VI; *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). The right to confront includes the right to meaningfully cross-examine the States' witnesses to cast doubt on their credibility. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). Where a jury's

---

[5] Holloway does not challenge the sentences on his other counts (count I, IV, V, VI, VII, VIII, IX or XI). The trial court also sentenced Holloway to (1) 198 months for first degree child molestation (count I), (2) 280 months for each count of second degree child rape (counts IV and V), (3) 60 months for each count of third degree child molestation (counts VI and VII), (4) 60 months for each count of third degree child rape (counts VIII and IX), and (5) 60 months for second degree incest (count XI). All of these sentences were to be served concurrently.

decision to believe or not believe a single witness is particularly important to the outcome of the case, the witness's credibility "must be subject to close scrutiny." *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980). This right is limited by rules governing the admissibility of evidence. *State v. Finch*, 137 Wn.2d 792, 825, 975 P.2d 967 (1999); *see also State v. Donald*, 178 Wn. App. 250, 263-64, 316 P.3d 1081 (2013), *review denied*, 180 Wn.2d 1010 (2014). The right to confront the State's witnesses does not include the right to admit otherwise inadmissible evidence. *State v. Aguirre*, 168 Wn.2d 350, 362-63, 229 P.3d 669 (2010).

We normally review evidentiary rulings for an abuse of discretion. *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). But we review de novo a defendant's claim he has been denied his constitutional right to present a defense. *Jones*, 168 Wn.2d at 719. In *Donald*, Division One of our court recognized the conflict between these two standards when the defendant asserts a constitutional right to present a defense. *Donald*, 178 Wn. App. at 255. Our court did not resolve this conflict because we held that the trial court did not err under either standard. *Donald*, 178 Wn. App. at 255. We adopt that same approach here.

Holloway argues that the trial court violated his right to confront the State's witnesses when it erroneously excluded evidence of G.S.R.'s prior recanted allegation under the rape shield statute

and found this evidence was irrelevant for impeachment under ER 608(b).[6] The trial court improperly excluded this evidence under the rape shield statute.[7] But the trial court did not abuse its discretion in excluding this evidence as irrelevant for impeachment under ER 608(b); nor did the trial court violate Holloway's Sixth Amendment right.

## A. Rape Shield Statute Not Applicable

Holloway sought to cross-examine G.S.R. about her prior recanted allegation, made when G.S.R. was seven years old involving another male adult, to imply she has a propensity to "cry rape." *State v. Harris*, 97 Wn. App. 865, 872, 989 P.2d 553 (1999). The trial court ruled that this evidence was not admissible under RCW 9A.44.020, the rape shield statute. The rape shield statute does not prohibit admission of evidence of past sexual *abuse* because the rape shield statute is concerned with using a victim's past *consenting* behavior to discredit a current allegation of sexual misconduct. *State v. Kilgore*, 107 Wn. App. 160, 177, 26 P.3d 308 (2001), *aff'd*, 147 Wn.2d 288, 53 P.3d 874 (2002). But consent is not an issue in child sexual abuse. *State v. Carver*, 37 Wn. App. 122, 124, 678 P.2d 842 (1984). The trial court erred in applying the rape shield statute to exclude evidence of G.S.R.'s prior recanted allegation of sexual abuse.

---

[6] ER 608(b) provides that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

[7] Subject to certain exceptions, the rape shield statute, RCW 9A.44.020 provides that "[e]vidence of the victim's past sexual behavior . . . is inadmissible on the issue of credibility."

## B. Credibility Evidence Must Be Relevant

We next review whether the trial court erred when it excluded G.S.R's recantation as irrelevant for impeachment under ER 608(b). Holloway argues that G.S.R.'s prior recanted allegation of sexual abuse at age seven was relevant to her sexual abuse allegation against him. Holloway wanted to impeach G.S.R. by cross-examination at trial with her prior recanted allegation, which Holloway believed to be false. Holloway argues this excluded potential testimony would have cast doubt on G.S.R.'s credibility which was essential to the State's case.

ER 608 allows a party to cross-examine a witness about specific instances of past conduct in order to cast doubt on the witness's credibility. ER 608(b). Credibility impeachment questions must be relevant to the truthfulness of the witness's present testimony. *State v. Benn*, 120 Wn.2d 631, 651-52, 845 P.2d 289 (1993). Such evidence is relevant if it casts doubt on the witness's credibility, or the witness's credibility is "a fact of consequence" to the trial. *State v. Allen S.*, 98 Wn. App. 452, 459-60, 989 P.2d 1222 (1999). A defendant's proffered evidence "'must be of at least minimal relevance'" and he or she cannot avoid this requirement simply because that evidence is about a past abuse accusation with some relation to the victim's credibility. *Jones*, 168 Wn.2d at 720 (quoting *Darden*, 145 Wn.2d at 622). A trial court may exclude evidence of specific instances of conduct for impeachment if it is remote in time. *State v. Wilson*, 60 Wn. App. 887, 893, 808 P.2d 754 (1991).

The trial court excluded this evidence as irrelevant. The trial court found that G.S.R.'s recanted allegation made when she was 7 years old was not probative of whether G.S.R. was credible at 15 years old, when she alleged Holloway had sexually abused her for 4 years. We agree that G.S.R.'s prior recanted allegation was not probative of her truthfulness or untruthfulness as to

the current charges against Holloway. This evidence was irrelevant and inadmissible for impeachment under ER 608(b). The trial court did not abuse its discretion in excluding this evidence. Because evidence of G.S.R.'s prior recanted allegation was irrelevant, and the right to confront does not include the right to admit inadmissible evidence, the trial court did not violate Holloway's constitutional right to confront witnesses.

## II. SUFFICIENT EVIDENCE OF PENETRATION

To properly convict a criminal defendant, the jury must decide that the State proved every element beyond a reasonable doubt. WASH. CONST. art. I, §§ 3, 22; *Apprendi v. New Jersey*, 530 U.S. 466, 477, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). We decide whether the State presented sufficient evidence on the charges of second and third degree child rape by asking "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt'" based upon the evidence the State presented on the record. *State v. Drum*, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010) (quoting *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003)). We review the evidence in the light most favorable to the State, drawing all reasonable inferences most favorably to the State and interpreted most strongly against the defendant. *Drum*, 168 Wn.2d at 34-35.

A person commits second degree child rape when he or she has sexual intercourse with a child who is at least 12 years old but less than 14 years old; a person commits third degree child rape when he or she has sexual intercourse with a child who is at least 14 years old but less than 16 years old. RCW 9A.44.076; RCW 9A.44.079. The difference between these two degrees of child rape is the age of the victim and the difference in age of the perpetrator. RCW 9A.44.076; RCW 9A.44.079. "'Sexual intercourse'" has its ordinary meaning and includes "any penetration

of the vagina . . . however slight, by an object," when committed on one person by another. RCW 9A.44.010(1)(a)-(b).

Holloway argues that the State did not prove he committed second or third degree child rape as charged in counts IV and VIII because the State did not present sufficient evidence of vaginal penetration.[8] He argues that G.S.R. described Holloway touching, at most, G.S.R.'s labia minora, which, according to Holloway, is not part of the definition of "vagina." Br. of Appellant at 20. The State argues that even if Holloway's characterization of G.S.R.'s testimony is true, it presented sufficient evidence of sexual intercourse because the labia is part of the legal definition of "vagina." Br. of Resp't at 20-21. We agree with the State.

Washington courts have long held that the labia minora are part of the female sex organ, the vagina, and have rejected Holloway's specific argument at least three times. *State v. Snyder*, 199 Wash. 298, 300, 91 P.2d 570 (1939); *State v. Weaville*, 162 Wn. App. 801, 813, 256 P.3d 426 (2011); *State v. Delgado*, 109 Wn. App. 61, 65-66, 33 P.3d 753 (2001), *rev'd in part on other grounds*, 148 Wn.2d 723, 63 P.3d 792 (2003); *State v. Montgomery*, 95 Wn. App. 192, 200-01, 974 P.2d 904 (1999); *State v. Bishop*, 63 Wn. App. 15, 19, 816 P.2d 738 (1991). We decline Holloway's invitation to reexamine the law on this point.

The State provided sufficient evidence of vaginal penetration. Viewed in the light most favorable to the State[9], a rational jury could decide that the State presented proof beyond a

---

[8] The jury convicted Holloway of two counts of second degree child rape (counts IV and V) and two counts of third degree child rape (counts VIII and IX). Holloway appeals only two of these four rape convictions: One second degree child rape conviction (count IV) and one third degree child rape conviction (count VIII).

[9] *Drum*, 168 Wn.2d at 34-35.

11

reasonable doubt through G.S.R.'s testimony that Holloway committed every element of second and third degree child rape as charged. We affirm Holloway's convictions on counts IV and VIII.

### III. Reasonable Doubt Jury Instruction and State's Closing Argument

Holloway argues that the trial court's instruction on reasonable doubt, combined with the State's closing, diluted the State's burden of proof. He also argues that this instruction and the State' closing deprived him of due process and warrant reversal of all of his convictions. We disagree.

### A. Burden of Proof Jury Instruction

Due process requires that jury instructions clearly inform the jury that the State bears the burden to prove every essential element of a crime beyond a reasonable doubt. *State v. Bennett*, 161 Wn.2d 303, 307, 317, 165 P.3d 1241 (2007). It is reversible error when an instruction fails to do so by relieving the State of its burden. *Bennett*, 161 Wn.2d at 307. We review challenged jury instructions de novo. *Bennett*, 161 Wn.2d at 307.

WPIC 4.01 includes optional "abiding belief" language that instructs the jury as follows: "If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt." WPIC 4.01 (emphasis omitted). The optional "abiding belief" language in WPIC 4.01 is bracketed and is not mandatory on trial courts. Washington courts have upheld the traditional "abiding belief" instruction multiple times, as has the United States Supreme Court. *See, e.g., Victor v. Nebraska*, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994) and *State v. Pirtle*, 127 Wn.2d 628, 658, 904 P.2d 245 (1995) (upholding the "abiding belief" phrase in the pattern instruction because it does not "diminish" the definition of reasonable doubt), *cert. denied*, 539 U.S. 916 (2003).

Holloway cites *State v. Emery*, 174 Wn.2d 741, 278 P.3d 653 (2012) to support his argument. But that case is distinguishable: *Emery* held that the State made an improper argument by telling the jury that its verdict needed to "'speak the truth,'" analyzing the issue under prosecutorial misconduct rules rather than an instructional error. *Emery*, 174 Wn.2d at 751, 756.

Contrary to Holloway's argument, the Washington State Supreme Court in *Bennett* instructed trial courts to use WPIC 4.01 in every criminal case because the concept of reasonable doubt is so fundamental that it requires Washington trial courts to adhere to a "clear, simple, accepted, and uniform instruction." *Bennett*, 161 Wn.2d at 317-18. Failure to use WPIC 4.01 is error unless the proposed instruction "proved to be better than the WPIC." *State v. Castillo*, 150 Wn. App. 466, 472-73, 208 P.3d 1201 (2009).

The reasonable doubt instruction in Holloway's trial told the jury that it must "fully, fairly, and carefully" consider all the evidence or lack of evidence. CP at 106 (Instruction 3). After this consideration, the jury was instructed that if they had an "abiding belief" in the truth of the charge, then they "[were] satisfied beyond a reasonable doubt." CP at 106 (Instruction 3). The reasonable doubt instruction did not infer or tell the jury, as Holloway argues, to disregard the evidence and decide the case based on what they thought was true. The trial court's reasonable doubt instruction, which included the "abiding belief" language, did not relieve the State of its burden of proof and this instruction did not violate Holloway's constitutional rights.

### B. State's Closing Argument

Holloway also argues that the State "further diluted" the burden of proof during closing by asking the jury to rely on their gut, intuition, experiences, hearts, and own feelings when deciding whether to believe G.S.R.'s testimony. Br. of Appellant at 31. Holloway argues that the State

appealed to the jury to "find the truth, rather than to determine whether the State had proved each element of each charged offense beyond a reasonable doubt." Br. of Appellant at 33. Holloway never objected to the State's closing or the "abiding belief" language, nor ask for a curative instruction. We hold that the State's closing was not improper.

To prove prosecutorial misconduct, the defendant on appeal must establish that the State's statements were improper and prejudicial in the context of the entire record. *Emery*, 174 Wn.2d at 760, 761. If a defendant does not object during closing, the defendant waives any error unless the misconduct was so flagrant and ill-intentioned that a curative instruction could not have cured the resulting prejudice and there is a substantial likelihood that the misconduct affected the jury's verdict. *Emery*, 174 Wn.2d at 760-61.

Credibility is within the sole determination of the finder of fact. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004). During closing, the State urged the jury to find G.S.R. credible and to believe her testimony over Holloway's testimony. By explaining various sources the jury could use to find G.S.R. credible, the State's closing was intended to guide the jury in its credibility determination. The State never told the jury to find the truth, speak the truth, or infer to the jurors that was their role. The State reviewed each count, discussed every element of each crime, detailing the testimony and evidence to support each count. The State asked the jury to convict Holloway based on the evidence and the events that G.S.R. testified to and the State referred to the "abiding belief" language in the reasonable doubt instruction. The State implored the jury to convict based on the evidence it presented, not, as Holloway argues, in order to find the truth.

Our court has already held that closing argument statements similar to the State's closing here did not constitute prosecutorial misconduct. *State v. Curtiss*, 161 Wn. App. 673, 701-02, 250 P.3d 496 (2011) (holding that the prosecutor did not engage in misconduct by telling the jurors to examine their "'gut'" and their "'hearts'" to find the defendant guilty). The State's closing did not relieve the State of its burden of proof.

## IV. THREE SENTENCES EXCEED THE STATUTORY MAXIMUM

Holloway argues that the sentencing court erred in imposing sentences that exceed the statutory maximum for his convictions on counts II, III, and X.[10] The State concedes this issue.

A term of confinement, combined with a term of community custody, cannot exceed the statutory maximum for the crime as provided in RCW 9A.20.021; the trial court must reduce the term of community custody if the combined total is beyond the maximum sentence. RCW 9.94A.701(9); *State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012). Holloway's sentences on counts II, III, and X were for class B felonies, which carry a statutory maximum confinement sentence of 120 months. RCW 9A.20.021(1)(b). The trial court sentenced Holloway to 116 months on count II, 116 months on count III, and 102 months on count X, and 36 months of community custody on each of these counts, exceeding the statutory maximum. We remand to amend the community custody terms in the judgment and sentence so that the total concurrent sentences for these three convictions do not exceed the 120 month statutory maximum.

---

[10] Counts II and III are for second degree child molestation; count X is for first degree incest.

15

No. 44453-4-II

CONCLUSION

We hold that (1) the trial court properly excluded evidence of G.S.R.'s prior recantation as irrelevant, (2) the State presented sufficient evidence of vaginal penetration to support the jury's guilty verdicts on counts IV and VIII, (3) the trial court's inclusion of "abiding belief" in the reasonable doubt instruction and the State's closing did not misstate the burden of proof because neither were improper, and (4) the trial court imposed a sentence that exceeds the statutory maximum for three of Holloway's convictions. Accordingly, we affirm Holloway's convictions, but remand to amend the community custody terms on counts II, III, and X so that the total concurrent sentences for each of these counts does not exceed the statutory maximum.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Sutton, J._

Sutton, J.

We concur:

_Worswick, P.J._

Worswick, P.J.

_Lee, J._

Lee, J.

16