[No. 929. Decided January 9, 1894.]

## THE STATE OF WASHINGTON, *Respondent*, v. U. A. GILE, *Appellant.*

CRIMINAL LAW — SUBSTITUTION OF NEW INFORMATION — CHAL-
LENGE TO JURORS — INFORMATION — ALLEGATIONS SHOWING
INVOLUNTARY MANSLAUGHTER — DEATH RESULTING FROM SUR-
GICAL OPERATION — EVIDENCE — REASONABLE DOUBT.

It is a matter within the discretion of the court to allow the
prosecuting attorney to withdraw an information on file prior to
the commencement of the trial, and file another charging the same
offense.

It is not error to refuse a challenge for cause to a juror who
states that he has read about the case in a newspaper, which created
a kind of impression upon his mind which he expected would require
a certain amount of evidence to remove, but that his mind would
yield as readily to the evidence as if he had never heard anything
whatever about the case.

A hypothetical opinion expressed by a juror prior to a trial, that
if what he had read about the case was true the accused ought to
be convicted on general principles, is not alone sufficient cause for
granting a new trial.

An information which states, in substance, that the defendants
unlawfully, willfully and feloniously inflicted a mortal wound, or
wounds, upon the deceased, and does not aver that the killing of
the deceased was willfully or voluntarily done, charges the crime
of involuntary manslaughter.

Although an information charging manslaughter may not show
that the accused bore the relation to the deceased of surgeon, and
that death resulted from a surgical operation performed, evidence
touching the character of the operation, the propriety of perform-
ing it, and the subsequent treatment of the deceased, is admissible.

Where it is shown by competent testimony that after deceased
had lost all hope or expectation of recovery, and while under a
solemn sense of impending death, he stated that he had been
"butchered" by the doctors, the evidence is admissible as a dying
declaration as to the cause of the declarant's death.

Where the court charges the jury that, "A doubt, to justify an
acquittal, must be reasonable, and it must arise from a candid and
impartial investigation of all the evidence. If, after considering
all the evidence in the case, you can say that you have an abiding

conviction of the truth of the charge, then you are satisfied beyond a reasonable doubt, and should convict; if you have not such a conviction, you should acquit," it is not error to refuse a request for a charge that "a reasonable doubt for a trial juror is such a doubt as a man of ordinary prudence, sensibility and decision, in determining an issue of like concern to himself as that before the jury to the defendant, would allow to have any influence whatever upon him, or make him pause or hesitate in arriving at his determination."

In an action for manslaughter against a surgeon for causing death by a surgical operation, the consent of the deceased to the operation is a good defense only where the operation is performed with due care and skill.

*Appeal from Superior Court, Lewis County.*

*O. V. Linn,* and *Swasey & Lemley,* for appellant.

*A. E. Rice,* Prosecuting Attorney, *B. W. Coiner, S. C. Herren,* and *M. A. Root,* for The State.

The opinion of the court was delivered by

ANDERS, J.— An information was filed in the superior court of Lewis county, by the prosecuting attorney in and for said county, purporting to charge the appellant, together with James D. Minkler and Catherine McCormick, with the crime of manslaughter in causing the death of one Alfred Wright. The appellant, at his own request, was tried separately, and a verdict of guilty was returned by the jury. A motion for a new trial was filed and overruled. A motion in arrest of judgment was then filed, which was likewise denied; whereupon the appellant was sentenced by the court to imprisonment in the state penitentiary for a period of four years.

Before the commencement of the trial the prosecuting attorney asked and obtained leave of the court to withdraw the information then filed, and to file a new information charging the same offense. This proceeding was objected to by the defendants, and the ruling of the court upon the objection is here assigned as error. It is not claimed that

the defendant was in any respect injured or prejudiced by the action of the court, nor is it claimed that the proceeding was unconstitutional, but the objection is urged solely upon the alleged ground that the court had no power to permit the filing of a new information, and that when the prosecuting attorney had once made and filed an information, he had exhausted the power conferred upon him by law.

Upon the facts as stated in appellant's brief, it is not necessary to enter into a discussion of the question whether or not a trial court has the power to permit an information to be amended after it has been filed with the clerk. That question, strictly speaking, is not raised by the ruling· of the court now under consideration. The request to withdraw the information was virtually a request to quash it, or set it aside, and that the court had discretionary power to do on motion of the prosecuting attorney. 1 Archbold, Crim. Pr. & Pl. (Pomeroy's Notes), p. 318; Code Proc., § 1372.

Indeed, the appellant would have had no legal ground of complaint if a second information had been filed against him during the pendency of the first. *State v. Freidrich,* 4 Wash. 204 (29 Pac. 1055).

We think the court did not abuse the discretion vested in it by § 1301 of the Code in denying the challenge for cause interposed by the defendant to the juror Adams. The record discloses that upon the trial of the challenge the juror stated that he was not acquainted with the defendant, and knew nothing about the case except what he read in a newspaper; that he formed no opinion from what he had read as to the guilt or innocence of the defendant, and then had no such opinion, but that what he read in the newspaper created a kind of impression upon his mind which he "expected" would require a certain amount of evidence to remove. He further stated that as a juror he

could entirely disregard this impression and render a verdict according to the evidence and the law as given by the court.    He had heard no discussion of the merits of the case by any person or persons; and he stated, in response to a question propounded by the court, that his mind would yield as readily to the evidence as if he had never heard anything whatever about the case.    Under this state of facts, the doctrine announced by this court in *Rose v. State*, 2 Wash. 310 (26 Pac. 264), is not applicable.  See Code Proc., § 346.    It is evident from the whole examination of this juror that any impression or opinion which he may have entertained as to the guilt or innocence of the defendant was too evanescent and unsubstantial to bias his mind or cloud his judgment.

It is claimed on behalf of the appellant that the juror Whistler, who was not challenged, was, in fact, not impartial, and had, previously to the trial, expressed an opinion indicative of prejudice against the appellant, and that for this reason the court erred in overruling appellant's motion for a new trial.    Upon his examination as to his competency to serve as a juror in this case, the said Whistler stated, in effect, that he knew nothing about the case further than a statement which he saw in a newspaper called the *Winlock Pilot*, to the effect that the defendants had had a preliminary examination and were held for trial, that the article he read made no impression upon his mind, and that he had no bias or prejudice for or against the defendants, and had neither formed nor expressed any opinion as to their guilt or innocence.    But, upon the hearing of the motion for a new trial, the appellant produced the affidavit of one Landrum, which was corroborated by Langhorne, in which it was stated that, on January 21, 1893, Whistler, in a conversation in his barber shop at Winlock, remarked, in substance, that from what he had read and heard about the case, he believed they (meaning

the defendants) would be convicted, and that if what he had read was true they ought to be convicted on general principles, and he believed they would be convicted. Whistler, in a counter affidavit filed on behalf of the state, vigorously denied making any such remarks, and asserted that, prior to the trial, he took no interest whatever in the case and had no conversation with any one as to its merits, and had at the time of the trial formed no opinion as to the guilt or innocence of the defendant. It appears from the affidavit of Whistler that, at the time mentioned by Landrum and Langhorne, the latter were not the only persons present in his barber shop, and it is therefore possible that both Landrum and Langhorne were mistaken as to the person who made the declarations attributed to Whistler. But even if he did make use of the expressions set out in the affidavit, it does not necessarily follow therefrom that he was not a fair and impartial juror in the trial of the case. The opinion expressed was purely hypothetical and would not alone have been sufficient cause for granting a new trial. It is not every opinion, formed or expressed, that will disqualify a juror, but only such as prevent the giving of a fair trial and impartial verdict.

No demurrer was interposed to the information in the court below, nor is it claimed here that the facts therein stated do not constitute a crime; but it is contended, with much earnestness and ability by the learned counsel for the appellant, that it charges the defendants with voluntary manslaughter, whereas the proof shows that, if any crime was committed at all, it was that of involuntary manslaughter, and that, therefore, the information was not sustained by the evidence, and consequently the court erred in refusing to grant the motion in arrest of judgment, which was based upon that ground.

That a party informed against for voluntary manslaughter cannot, under § 7 of our Penal Code, be con-

victed of involuntary manslaughter, seems to be conceded by counsel for the respondent, but they insist that the information in this case in fact charges the defendants with the commission of involuntary, and not voluntary, manslaughter.    In order to determine which of these views is the correct one, it becomes necessary to determine what facts are set out in the information, the material portion of which, so far as the question now under consideration is concerned, is as follows:

"Comes now A. E. Rice, prosecuting attorney for the said Lewis county, State of Washington, the said superior court of the said Lewis county being in session, and the grand jury for said county not being in session.    And now here said prosecuting attorney gives the said superior court to understand, and to be informed by this information, that the above named James D. Minkler, U. A. Gile and Catherine McCormick are guilty of the crime of manslaughter, committed as follows: The said James D. Minkler, U. A. Gile and Catherine McCormick, in said Lewis county, State of Washington, to wit, the fifth day of December, A. D. 1892, with force and arms, in and upon the body of one Alfred Wright, then and there being, unlawfully and feloniously did make an assault, and that they, the said James D. Minkler, U. A. Gile and Catherine Mc-Cormick, did then and there, unlawfully, feloniously and forcibly, with a certain knife and saw and other edged instruments, which they, the said James D. Minkler, U. A. Gile and Catherine McCormick, in their hands then and there held, in and upon the right hip of him, the said Alfred Wright, then and there. unlawfully, willfully and feloniously, did strike and thrust; giving to the said Alfred Wright then and there and thereby, with the said knife, saw and other edged instruments, in and upon the said right hip of the said Alfred Wright, a mortal wound, of the breadth of four inches and of a depth of six inches; severing and mutilating the femur bone of the right leg of him, the said Alfred Wright; and that the said James D. Minkler, U. A. Gile and Catherine McCormick did then and there continuously, from said fifth day of December,

2—8 WASH.

A. D. 1892, until the thirteenth day of December, A. D. 1892, unlawfully, willfully and feloniously, and with force and arms, place and keep the body of him, the said Alfred Wright, in and upon a filthy, offensive and unclean bed, in a filthy room filled with vile, unhealthy and poisonous atmosphere; and the said James D. Minkler, U. A. Gile and Catherine McCormick did then and there continuously, from the said fifth day of December, A. D. 1892, until the thirteenth day of December, A. D. 1892, unlawfully, willfully and feloniously, keep said wound upon the said right hip of him, the said Alfred Wright, in an unclean and filthy condition; then and there giving to the said Alfred Wright, by then and there unlawfully, willfully, feloniously and maliciously striking and thrusting with the knife, saw and other edged instruments aforesaid, in and upon the said right hip of him, the said Alfred Wright, and giving him, the said Alfred Wright, a mortal wound four inches in breadth and of the depth of six inches, and severing and mutilating the femur bone of the right leg of him, the said Alfred Wright, as aforesaid, and by then and there unlawfully, willfully and feloniously placing and keeping the body of him, the said Alfred Wright, in and upon a filthy, offensive and unclean bed in a filthy room, filled with vile, unhealthy and poisonous atmosphere as aforesaid, and by then and there unlawfully, willfully and feloniously keeping said wound upon the right hip of him, the said Alfred Wright, in an unclean and filthy condition, as aforesaid, several mortal injuries in and upon the right hip and other parts of the body and the lungs, stomach and blood of him, the said Alfred Wright, of which said mortal injuries the said Alfred Wright, from the said fifth day of December, A. D. 1892, to the twenty-third day of December, A. D. 1892, in the county and state aforesaid, did languish, and languishing did live; on which twenty third day of December, A. D. 1892, at the county and state aforesaid, of the mortal wounds and injuries aforesaid, the said Alfred Wright aforesaid died.

"And so the prosecuting attorney aforesaid does say and give the superior court aforesaid to understand that the said James D. Minkler, U. A. Gile and Catherine McCormick, at the said Lewis county and State of Washing-

ton, in the manner, at the time and by the means aforesaid, him, the said Alfred Wright, unlawfully, willfully and feloniously did kill and slay, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Washington.''

It will be perceived that it is nowhere averred in this information that the accused killed the deceased involuntarily, but in the commission of some unlawful act; but such averments, though highly proper, are not absolutely necessary in order to constitute a charge of involuntary manslaughter, if, from the facts alleged, the inference arises that death resulted involuntarily from the commission of an unlawful act on the part of the accused. *Brown v. State*, 110 Ind. 486 (11 N. E. 447).

Neither is it alleged in the information that the accused voluntarily killed the deceased, unless the language used in the closing portion thereof, commencing with the words ''and so,'' amounts to such an averment. This is admitted by counsel for the appellant, but they contend that the words referred to clearly show that the crime of voluntary manslaughter was intended to be charged. We have heretofore had occasion to determine the effect of similar language in indictments, and it may be said to be the doctrine of this court that the allegations in question are but the statement of a conclusion drawn by the accuser from the facts stated in the body of the indictment or information, and constitute no essential part thereof (*Leonard v. Territory*, 2 Wash. T. 393, 7 Pac. 872; *Blanton v. State*, 1 Wash. 265, 24 Pac. 439), and might properly be omitted altogether. While the information does state, in substance, that the defendants unlawfully, willfully and feloniously inflicted a mortal wound, or wounds, upon the deceased, it fails, as we have said, to state as a fact, that the killing of the deceased was willfully or voluntarily done. We, therefore, conclude that it states facts sufficient to constitute the

crime of involuntary manslaughter, and that there was no
error committed by the court in refusing to arrest the
judgment.

The evidence given upon the trial discloses the fact that
the appellant is a physician and surgeon, and that the
wounds mentioned in the information were made in the per-
formance of a surgical operation.    But the information is
silent as to the relations existing between appellant and
the deceased, and hence it is argued that it is defective in
that regard and insufficient to admit evidence of the man-
ner in which the operation was performed.

It is an elementary principle in criminal pleading that
every special fact which constitutes an essential part of the
offense charged must be fully set forth in the indictment
or information.  Whart. Crim. Pl. & Pr., § 151.    And we
would be inclined to adopt the view of counsel if we were
satisfied that the fact that the defendant in this instance
was a surgeon was such an essential ingredient of the crime
charged that the omission to state it in the information
rendered it defective or caused any injury to the defendant,
or deprived him of any right whatever.    But we are not so
satisfied, and do not think that appellant was prejudiced by
the want of such an averment.    Nor is this information with-
out precedent in the particular now under discussion.    In
the late case of *Commonwealth v. Pierce*, 138 Mass. 165, the
defendant, who was a practicing physician, was indicted
for manslaughter in causing the death of a patient, but it
was nowhere alleged in the indictment that the relation of
physician and patient existed.    The capacity in which the
defendant acted was, in that case as in this, only disclosed
by the proofs.    It was a strongly contested question at the
trial of this case, whether the appellant did not in fact per-
form a highly dangerous and unnecessary surgical opera-
tion upon the deceased, without his consent or knowledge;
and cogent testimony was produced before the jury for the

purpose of proving that the appellant was only employed to reduce a supposed dislocation of the head of the femur by simply pulling the bone into its proper place. While the defendant himself testified that he did nothing but what he was called and requested to do by the deceased, he also testified that the first thing he did, after rendering the old gentleman, Mr. Wright, insensible by means of anæsthetics, was to put deceased's right leg over his (appellant's) shoulder and "surge" upon it until he found it impossible, or impracticable, to break up the anchylosis that existed between the dorsal part of the ilium and the head of the femur.

This testimony, which was corroborated by other witnesses, tended to show to the jury that it might have been the understanding that the deceased was not to submit himself to a more dangerous operation with knife and saw. Failing to set the joint by pulling the leg as above stated, the appellant then made a long and deep incision in the hip of the deceased, and, with saw and forceps, removed a portion of the neck of the femur, for the purpose, as he says, of straightening the limb. The anchylosis, however, was not broken up, and, in fact, it was revealed upon a *post mortem* examination that the hip joint had been only partially dislocated, if at all, as the head of the femur was still in the acetabulum and firmly attached to the side thereof. This operation consumed considerable time—about an hour according to the testimony—and the deceased, who was an old and rather feeble man, lingered some two weeks thereafter, and then died. The defendant undertook to justify the cutting on the ground that it was necessary in order to remove pus which had gathered there to such an extent as to endanger the patient's life, and the removal of a portion of the femur on the ground that it was in a condition styled necrosis, or, in other words, decayed.

A great deal of the testimony touching the character of

the operation, the propriety of performing it at all, and the subsequent treatment of deceased, was objected to on the ground that it was irrelevant and immaterial and not sustained by the information.   It is not practicable to set forth all of this testimony, and we will therefore simply say that, under the circumstances of this case, we are of the opinion that it was competent and admissible.

We think the dying declarations of the deceased were properly admitted in evidence.   It was shown by competent testimony that after he had lost all hope or expectation of recovery, and while under a solemn sense of impending death, he made the statement, among others, that he had been "butchered" by the doctors and the old woman, Mrs. McCormick.   The objection is, that the declaration was but the expression of an opinion and not the statement of a fact as to the cause of the declarant's death; but we are inclined to view it otherwise.   The word butchered simply means killed in an unusual, cruel or wanton manner, and no more expresses an opinion than the word killed when used without qualification.   The motion to strike out this portion of the testimony was properly denied.

At the close of the trial, counsel for the defendant asked the court to give numerous instructions to the jury, some of which were refused and exception taken, and the ruling of the court thereon is alleged as error.   Many of these objections, however, were not urged upon the argument in this court, and therefore will not be discussed.   But some of them were earnestly argued and pressed upon our attention, and will now be specifically considered.

Upon the subject of reasonable doubt, the defendant asked, and the court refused, the following instruction:

"No. 14.  A reasonable doubt is never an absolute but always a relative question.   A reasonable doubt for a trial juror is such a doubt as a man of ordinary prudence, sensibility and decision, in determining an issue of like concern

to himself as that before the jury to the defendant, would allow to have any influence whatever upon him, or make him pause or hesitate in arriving at his determination."

This instruction seems to be couched in the identical language of Chief Justice GREENE in defining a reasonable doubt, in the opinion delivered by him in the case of *Leonard v. Territory*, 2 Wash. T. 381 (7 Pac. 872). But, with due deference to the learning and ability of that eminent jurist and his concurring associates, we are constrained to say that we are not willing to accept that as the settled definition of this court to the exclusion of all other definitions that may be given. Any instruction on the question of reasonable doubt which tends to explain the meaning of the term, without confusing the minds of the jury, ought not, in our opinion, to be deemed erroneous. In fact, as was well said by the supreme court of the United States in *Miles v. United States*, 103 U. S. 304, "attempts to explain the term reasonable doubt do not usually result in making it any clearer to the minds of the jury." And that being so, we apprehend it would be better in most cases not to undertake to explain it at all. In this instance the trial judge charged the jury as follows:

"A doubt, to justify an acquittal, must be reasonable, and it must arise from a candid and impartial investigation of all the evidence. If, after considering all the evidence in this case, you can say that you have an abiding conviction of the truth of the charge, then you are satisfied beyond a reasonable doubt, and should convict; if you have not such a conviction, you should acquit."

This charge having been given to the jury, we fail to see wherein the defendant was injured by the court's refusing to give the instruction requested by him The jury were no doubt as much enlightened by the instruction given as they would have been by the giving of the one refused. The charge given was at least as comprehensive as that given to the jury by Mr. Justice FIELD in *United*

*States v. Knowles,* 4 Sawy. 521, wherein he defined a reasonable doubt as a "doubt founded upon a consideration of all the circumstances and evidence, and not a doubt resting upon mere conjecture or speculation."

It is also contended that instructions numbered 8, 11 and 29 should have been given as requested. They are as follows:

"No. 8. If you fail to find from the evidence, beyond a reasonable doubt, that the deceased, Alfred Wright, died from the wound made by defendant in the hip, and you find that the deceased consented to the performance of the operation which the evidence shows was performed, then you must acquit the defendant of even assault and battery."

"No. 11. That in showing the cause of the death, the evidence must be so strong that it will not admit of a reasonable doubt, and you can indulge in no presumptions in aid of the evidence in order to arrive at the conclusion that the wound in deceased's hip and the subsequent treatment of him caused his death."

"No. 29. If you find from the evidence that the defendant performed the operation without the consent of the deceased, but do not find beyond a reasonable doubt that the wound was the cause of his death, then you may find the defendant guilty of manslaughter, assault and battery."

A mere glance at the instruction last above set forth will show that the court committed no error in refusing to give it to the jury without modification. If the operation was performed without the consent of the deceased, and did not result in his death, it is impossible to see how the defendant could be lawfully convicted of the crime of manslaughter. But it is argued that if this instruction was wrong, then instruction No. 8 must be correct and should not have been refused. But this instruction is also wrong, for the reason that it assumes that consent to a surgical operation in dangerous cases is a good defense, though the effect be fatal, irrespective of the manner in which it may be performed, which cannot, in our judgment, be the law.

Consent is only a good defense, in such cases, where the operation is performed with due care and skill. Desty, Crim. Law, 33a; Kerr on Homicide, § 26. It is no excuse for recklessness, or even want of usual skill. See 1 Whart. Crim. Law, § 362; see also *Commonwealth v. Pierce, supra.*

The eleventh instruction was misleading, and for that reason alone was properly refused. While intelligible to the mind of a lawyer, it would most likely have been entirely misunderstood by the jury. From a careful consideration of all the instructions given, we feel satisfied that the law applicable to the facts in this case was fairly and fully presented to the jury, and that was all the defendant had a right to claim.

The further point is made in appellant's brief that the cause of death was not shown beyond a reasonable doubt. A number of expert witnesses gave opinions upon that question. Some of them were positive that deceased died from the effect of the surgical operation, while others seemed to think that death might have resulted from some other cause. The condition of deceased's hip at the time of the operation was shown to have been better than it had been for months previously. He was not shown to be suffering from any disease; but it appears that after the operation was performed he never rallied, but on the contrary steadily declined until he died. With all the circumstances and evidence before them the jury found adversely to appellant's contention, and we are unable to say that their conclusion is not supported by the evidence.

Some other objections are raised by the appellant, but as we do not think they are tenable, we need not further extend this opinion by discussing them.

The judgment of the lower court is affirmed.

DUNBAR, C. J., and STILES, HOYT and SCOTT, JJ., concur.