FILED
COURT OF APPEALS
DIVISION II

2014 JUL -1 AM 8: 49

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44265-5-II |
| Respondent, | |
| v. | |
| SEAN P. STOLL, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Sean Stoll was convicted of two counts of first degree rape of a child. He appeals, arguing that (1) the trial court violated the prohibition against double jeopardy by failing to instruct the jury that each count must be based on a separate and distinct act, (2) the trial court's jury instructions improperly defined the reasonable doubt standard, (3) the trial court erred by imposing legal financial obligations because substantial evidence fails to support the trial court's boilerplate finding that Stoll has an ability to pay, and (4) the trial court erred by imposing four community custody conditions. We accept the State's concession that the community custody conditions were erroneous, but we reject the remaining arguments raised in Stoll's appeal.

In a pro se statement of additional grounds (SAG), Stoll further contends that (5) the trial court violated his right to trial by an impartial jury by failing to excuse a potential juror for cause, (6) insufficient evidence supports his convictions, (7) the trial court erroneously admitted a videotaped interview with the victim, (8) Stoll's counsel had a conflict of interest, and (9) the prosecutor committed misconduct by calling a clinician to testify and Stoll's counsel was ineffective for failing to object. None of the claims in Stoll's SAG warrant reversal. Accordingly, we affirm Stoll's convictions and remand his judgment and sentence to the trial court to strike the erroneous community custody conditions.

## FACTS

In 2008, nine-year-old S.J. reported to her father and stepmother that she had been sexually assaulted several months prior by her cousin, Stoll. At that time, Stoll's mother had been living with S.J.'s family, and Stoll sometimes stayed with them. When Stoll stayed the night, he slept in the living room with S.J., S.J.'s two brothers, and Stoll's mother.

S.J. disclosed to her father, stepmother, and grandmother that Stoll had put his finger on or inside her anus once during the night. S.J. also described an incident to her friend and then to the friend's grandmother.

S.J. then participated in a videotaped interview with Detective Shellee Stratton. S.J. told Detective Stratton that as part of a routine that lasted about a week, Stoll had touched her vagina with his hand and penetrated her vagina with his penis. S.J. said Stoll did this in the living room during the early morning while others were sleeping. S.J. was also examined by a clinician, who opined that S.J.'s genitalia appeared normal.

No. 44265-5-II

Stoll was first tried on an amended information for two counts of first degree rape of a child, but the jury could not reach a verdict. A second trial ended with two convictions, which we vacated in a previous appeal.[1] *See State v. Stoll*, noted at 168 Wn. App. 1042, slip op. at 1 (2012).

On a third amended information, the State tried Stoll a third time for two counts of first degree rape of a child. The third amended information based both counts on acts that occurred between April 24, 2006, and March 31, 2007, and based each count on "a[n] act separate and distinct from" the other count. Clerk's Papers (CP) at 46.

During voir dire, Stoll moved to excuse a potential juror for cause. The trial court denied this motion, and Stoll ultimately used a peremptory challenge to excuse the potential juror.

During the third trial, S.J. testified that in addition to putting his finger in her anus, Stoll put his penis in her vagina. She further testified that she reported to her father and her grandmother that Stoll had "had sex" with her. Report of Proceedings (RP) (Sept. 27, 2012) at 273.

By the time of the third trial, Detective Stratton had suffered a disability and was unable to testify. Another detective, who had observed the interview, authenticated the videotape before it was published to the jury. The clinician who examined S.J. also testified.

Stoll requested a jury instruction that would inform the jury that each count was based on a separate and distinct act. The trial court refused this instruction, reasoning that it was clear

---

[1] In Stoll's second trial, evidence of his prior sex offense conviction was admitted under RCW 10.58.090, which was held to be unconstitutional in *State v. Gresham*, 173 Wn.2d 405, 413, 269 P.3d 207 (2012).

3

from positioning of the *Petrich* instruction[2] that each count involved a separate act. The trial court gave a pattern instruction defining reasonable doubt.

The jury found Stoll guilty of both counts. In addition to a term of confinement, the judgment and sentence imposed various community custody conditions. Among these conditions were four which required Stoll to (1) pay for S.J. and her immediate family to receive counseling, (2) submit to penile plethysmograph testing on the request of his community corrections officer, (3) comply with various alcohol-related conditions, and (4) refrain from unsupervised use of the internet. The trial court further ordered, "A restitution hearing . . . shall be set by the prosecutor or by the court." CP at 13. But the trial court did not hold a restitution hearing or enter a restitution order.

Stoll appeals his convictions and these four community custody conditions in the judgment and sentence.

ANALYSIS

I. DOUBLE JEOPARDY

Stoll first argues that his two convictions violate the constitutional prohibition against double jeopardy because the trial court's jury instructions did not apprise the jury that it must

---

[2] *See State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). The *Petrich* instruction here stated,

> The State alleges that the defendant committed acts of rape of a child in the first degree on multiple occasions. To convict the defendant on any count of rape of a child in the first degree, one particular act of rape of a child in the first degree must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of rape of a child in the first degree.

CP at 42.

base each conviction on a separate and distinct act. We disagree because it was manifestly clear to the jury that each count was based on a separate and distinct act.

The double jeopardy clause protects a defendant from being convicted of multiple offenses that are identical in fact and law. *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). But the double jeopardy clause is not violated when two counts arise from separate and distinct acts. *State v. Mutch*, 171 Wn.2d 646, 662-63, 254 P.3d 803 (2011). We review an alleged double jeopardy violation de novo. *Mutch*, 171 Wn.2d at 661-62.

When multiple counts of the same crime allegedly occurred within the same charging period, the trial court's jury instructions are flawed if they do not inform the jury that each conviction must be based on a separate and distinct act; this flaw creates the possibility of a double jeopardy violation. *Mutch*, 171 Wn.2d at 662-63. The jury instructions here are flawed because the trial court did not instruct the jury of its obligation to find a separate and distinct act to support each conviction.

To determine whether the flawed jury instructions violated the prohibition against double jeopardy, we look beyond the jury instructions and examine the entire record to determine whether the convictions actually rested on separate and distinct acts.[3] *Mutch*, 171 Wn.2d at 663-64. "[O]ur review is rigorous and is among the strictest," and we must determine whether it was

---

[3] Neither a "separate crime" instruction nor a unanimity instruction can cure a failure to instruct the jury that each crime must be based on a separate and distinct act, unless it specifies that each crime requires proof of a different act. *Mutch*, 171 Wn.2d at 663. Thus, the trial court's other instructions do not bear on our analysis.

manifestly clear to the jury that the multiple counts were based on separate and distinct acts.[4] *Mutch*, 171 Wn.2d at 664.

In *Mutch*, our Supreme Court's review of the record disclosed "a rare circumstance where, despite deficient jury instructions, it is nevertheless manifestly apparent" that each conviction was based on a separate and distinct act. 171 Wn.2d at 665. There, the defendant was charged with five counts of rape, and the alleged victim testified to five separate episodes of rape. *Mutch*, 171 Wn.2d at 665. In its closing argument, the State discussed each of the five separate episodes. *Mutch*, 171 Wn.2d at 665. The defense argued that the five sexual acts were consensual but did not deny that they occurred. *Mutch*, 171 Wn.2d at 665.

Similarly, in *State v. Peña Fuentes*, 179 Wn.2d 808, 825-26, 318 P.3d 257 (2014), our Supreme Court held that a flawed jury instruction did not result in a double jeopardy violation. The defendant was convicted of one count of rape of a child and two counts of child molestation for acts occurring within the same time period. *Peña Fuentes*, 179 Wn.2d at 823. The *Peña Fuentes* court placed great weight on the State's closing argument, which clearly distinguished the acts constituting child rape from those constituting child molestation. 179 Wn.2d at 825-26. Further, the defendant challenged only the alleged victim's credibility, not the number of acts or whether they overlapped. *Peña Fuentes*, 179 Wn.2d at 825-26.

---

[4] *Mutch* did not decide whether a reviewing court should conduct a de novo review of the entire record or, alternatively, apply the constitutional harmless error standard. 171 Wn.2d at 664-65 & n.6. But in a more recent case involving this same instructional error, our Supreme Court conducted a de novo review of the record. *See State v. Peña Fuentes*, 179 Wn.2d 808, 823-26, 318 P.3d 257 (2014). We follow *Peña Fuentes*'s lead and do not apply the constitutional harmless error standard here.

Having conducted the searching review required by *Mutch*, we acknowledge that the record here contained conflicting evidence as to the number of acts that occurred. S.J. testified that Stoll penetrated her vagina with his penis and penetrated her anus with his finger on more than one occasion over "[a] couple of weeks." RP (Sept. 27, 2012) at 276. Likewise, in her videotaped interview with Detective Stratton, S.J. stated that Stoll "always" touched her during the night in a routine lasting about a week. Ex. 4 at 7. But S.J. testified in court that she had told Detective Stratton that it did not happen every night over the week. And S.J. further admitted on cross-examination that in an earlier trial she had stated *both* that Stoll touched her only once and more than once. In addition, S.J. reported only a single act to other witnesses—her father, stepmother, and grandmother—who testified to S.J.'s statements. Stoll argued that in light of the conflicting evidence, the jury should disbelieve S.J. entirely and, accordingly, find him not guilty. Thus, he challenged only the alleged victim's credibility. *See Peña Fuentes*, 179 Wn.2d at 825-26.

However, like the court in *Peña Fuentes*, we find that the closing arguments made it manifestly clear to the jury that each count was based on a separate and distinct act. The State argued, "[S.J.] testified it happened on more -- more than one occasion. So it happened at least twice." RP (Oct. 2, 2012) at 486. On rebuttal, the State further argued that the jury should find Stoll guilty of both counts because the evidence established "that Sean Stoll put his penis in her vagina and put his finger in her anus." RP (Oct. 2, 2012) at 507. Most clearly, Stoll's attorney told the jury that "to convict you have to conclude unanimously beyond a reasonable doubt that this happened twice on two separate dates" within the charging period. RP (Oct. 2, 2012) at 491. Stoll's attorney further argued,

7

I'm just saying to convict of one count you have to agree, all of you, it happened on [a day within the charging period]. And then to convict on the other count you have to find unanimously beyond a reasonable doubt that a separate incident happened. I'm not saying you have to agree on a particular day. But you have to agree that at least two [incidents happened].

RP (Oct. 2, 2012) at 499.

In light of the closing arguments, the record is manifestly clear that Stoll's two convictions are based on separate and distinct acts. Despite the trial court's instructional error, Stoll's convictions on both counts did not violate the double jeopardy clause.

## II. REASONABLE DOUBT INSTRUCTION

Stoll next argues that the trial court's reasonable doubt instruction violated his right to due process by misstating the reasonable doubt standard. This argument lacks merit.

We review claimed instructional errors de novo and in the context of the instructions as a whole. *State v. Brett*, 126 Wn.2d 136, 171, 892 P.2d 29 (1995). Jury instructions are proper when they inform the jury of the applicable law, are not misleading, and allow each party to argue its theory of the case. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

A trial court must instruct the jury that the State bears the burden to prove each element of a criminal offense beyond a reasonable doubt. *Bennett*, 161 Wn.2d at 307 (citing *Victor v. Nebraska*, 511 U.S. 1, 5-6, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994)). It is reversible error to instruct the jury in a manner that relieves the State of this burden. *Bennett*, 161 Wn.2d at 307 (citing *Sullivan v. Louisiana*, 508 U.S. 275, 280-81, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)).

Here, the trial court's reasonable doubt instruction stated,

The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State of Washington is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt.

8

A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.

A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. If, after such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.

CP at 33. This instruction was based on the pattern jury instruction, which makes the last sentence optional.[5] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008) (WPIC).

Challenging the trial court's inclusion of the optional last sentence, Stoll argues that the instruction misstated the reasonable doubt standard by referring to "'an abiding belief in the truth of the charge.'" Br. of Appellant at 24 (quoting CP at 33). According to Stoll, this phrase "encourages the jury to undertake an impermissible search for the truth and invites the error identified in [*State v. Emery*, 174 Wn.2d 741, 278 P.3d 653 (2012)]." Br. of Appellant at 24. This argument is contrary to well settled law.

The error identified in *Emery* occurred during closing argument when the prosecutor urged the jury to "speak the truth" by finding the defendants guilty. 174 Wn.2d at 751; *see* 174 Wn.2d at 760 ("The jury's job is not to determine the truth of what happened . . . . Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt."). But *Emery* is inapposite because the jury instruction here, considered as a whole, properly informed the jury that its job was to determine whether the State proved the charged

---

[5] Exercising its inherent supervisory power, our Supreme Court has held that trial courts must give a reasonable doubt instruction based on WPIC 4.01. *Bennett*, 161 Wn.2d at 318.

offenses beyond a reasonable doubt. *See State v. Fedorov*, ___ Wn. App. ___, 324 P.3d 784, 790 (2014).

Stoll acknowledges that our Supreme Court held in *State v. Pirtle*, 127 Wn.2d 628, 656-58, 904 P.2d 245 (1995), that a jury instruction properly defined reasonable doubt even though it contained the phrase "'abiding belief in the truth of the charge.'" Br. of Appellant at 27. Stoll then claims that *Pirtle* considered only the phrase "abiding belief," not the phrase "belief in the truth." But this is incorrect; *Pirtle* considered the entire optional sentence at the end of WPIC 4.01.[6]

Washington courts have repeatedly held that WPIC 4.01 correctly defines reasonable doubt. *Bennett*, 161 Wn.2d at 309 (collecting cases). WPIC 4.01 is based on a standard instruction to which error was assigned in *State v. Tanzymore*, 54 Wn.2d 290, 340 P.2d 178 (1959). *Bennett*, 161 Wn.2d at 308 & n.3. In *Tanzymore*, our Supreme Court stated that the standard instruction "has been accepted as a correct statement of the law for so many years, we find the assignment without merit." 54 Wn.2d at 291; *see also State v. Gile*, 8 Wash. 12, 23, 35 P. 417 (1894) (approving an instruction referencing "'an abiding conviction of the truth of the charge'"). Further, the United States Supreme Court has also found no error in instructions that defined proof beyond a reasonable doubt by referencing "an abiding conviction, to a moral certainty, of the truth of the charge." *Victor*, 511 U.S. at 14 (internal quotation omitted). Stoll's argument fails.

---

[6] *Pirtle* held that "[t]he addition of the last sentence does not diminish the definition of reasonable doubt given in the [previous] two sentences, but neither does it add anything of substance to WPIC 4.01. WPIC 4.01 adequately defines reasonable doubt. Addition of the last sentence was unnecessary but was not an error." 127 Wn.2d at 658.

### III. LEGAL FINANCIAL OBLIGATIONS

Stoll further argues for the first time on appeal that the trial court improperly imposed legal financial obligations on the basis of a boilerplate finding unsupported by substantial evidence that Stoll will likely have the ability to pay. In response, the State asserts that Stoll failed to preserve this argument because he did not object in the trial court. We agree with the State.

We recently decided that under RAP 2.5(a), a defendant is not entitled to challenge for the first time on appeal the imposition of legal financial obligations on the basis of a boilerplate finding. *State v. Blazina*, 174 Wn. App. 906, 911-12, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013).[7] Stoll correctly notes that RAP 2.5(a) gives us discretion to consider an issue raised for the first time on appeal, but we decline to do so here.

### IV. COMMUNITY CUSTODY CONDITIONS

Stoll argues that the trial court erred by imposing four community custody conditions requiring him to (1) pay for S.J. and her family to receive counseling, (2) submit to penile plethysmograph testing upon the request of his community corrections officer, (3) comply with various alcohol-related conditions, and (4) refrain from unsupervised use of the internet. The State concedes that the trial court erred by imposing each of the four conditions. We accept the State's concessions and vacate these four conditions.

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, sentencing courts are authorized to impose certain community custody conditions and required to impose others. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). The sentencing court has discretion to

---

[7] Our Supreme Court heard oral argument on *Blazina* on February 11, 2014.

11

impose crime-related conditions, and we review those conditions for a manifest abuse of discretion. RCW 9.94A.703(3)(f); *see State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993).

A.      *Payment of Counseling for Victim and Her Family*

The trial court did not enter a restitution order. Rather, as a condition of community custody, it ordered Stoll to "pay for all counseling services/therapy costs incurred by his/her victim and members of his/her immediate family as a direct result of his/her assault upon him/her as ordered by the Court." CP at 21. Both parties agree that this condition should be stricken because the trial court lacked authority under RCW 9.94A.703 to impose it. We agree and vacate this condition.

However, the parties dispute what should happen next. Without citation to authority, the State asks us to remand, allowing the trial court "to enter a restitution order under RCW 9.94A.753 for the payment of costs for crime-related victim counseling." Br. of Resp't at 16. Citing RCW 9.94A.753(1), Stoll argues that such a remand is inappropriate because a restitution order would be untimely. We agree with Stoll.

A court's authority to order restitution derives solely from statute. *State v. Davison*, 116 Wn.2d 917, 919, 809 P.2d 1374 (1991). RCW 9.94A.753(5) requires the sentencing court to order restitution whenever an offense results in a personal injury or property loss, unless extraordinary circumstances exist. But RCW 9.94A.753(1) provides in part,

> When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days except as provided in subsection (7) of this section.[8] The court may continue the hearing beyond the one hundred eighty days for good cause.

---

[8] RCW 9.94A.753(7) states that restitution is required where the victim is entitled to compensation under the crime victims' compensation act, chapter 7.68 RCW.

Unless the restitution hearing is continued, the 180-day period is mandatory. *State v. Tetreault*, 99 Wn. App. 435, 437, 998 P.2d 330 (2000); *see State v. Krall*, 125 Wn.2d 146, 147-48, 881 P.2d 1040 (1994) (considering an earlier version of the statute providing for a 60-day period). Further, the sentencing court cannot grant a continuance after the 180-day period has expired. *State v. Johnson*, 96 Wn. App. 813, 816-17, 981 P.2d 25 (1999). An untimely restitution order must be vacated. *State v. Dennis*, 101 Wn. App. 223, 229, 6 P.3d 1173 (2000).

Here, the sentencing hearing occurred November 13, 2012. Stoll immediately appealed. But RAP 7.2(e) authorizes the trial court to enter orders deciding postjudgment motions after a case has been accepted for appellate review. So the trial court had authority to enter a restitution order within 180 days of Stoll's sentencing even after this case was accepted for review.

Nothing in the record shows that the sentencing court set a restitution hearing within the prescribed time. Therefore, the 180-day period has expired and any future restitution order would be untimely. *See Dennis*, 101 Wn. App. at 229.

This conclusion is further supported by our Supreme Court's decision in *State v. Griffith*, 164 Wn.2d 960, 195 P.3d 506 (2008). In *Griffith*, the sentencing court entered a timely restitution order, but our Supreme Court vacated it for insufficient evidence. 164 Wn.2d at 962-63. In so doing, our Supreme Court prohibited the sentencing court from admitting new evidence on remand. *Griffith*, 164 Wn.2d at 968. Our Supreme Court explained, "Introducing new evidence on remand would conflict with the statutory requirement that restitution be set

within 180 days after sentencing."[9] *Griffith*, 164 Wn.2d at 968 n.6. Therefore, the 180-day

period is not tolled while an appeal is pending.[10]

B.    *Penile Plethysmograph Testing*

As a community custody condition, the trial court also ordered Stoll to "undergo periodic

polygraph and/or plethysmograph testing to measure treatment progress and compliance with

conditions of community custody at a frequency determined by his/her treatment provider and/or

his/her Community Corrections Officer." CP at 21. Stoll argues that this condition is invalid to

the extent it requires plethysmograph testing as requested by a community corrections officer.[11]

The State concedes this point. We accept the concession.

A sentencing court is authorized to impose community custody conditions, including

polygraph testing, that monitor compliance. *State v. Riles*, 135 Wn.2d 326, 342-43, 957 P.2d

655 (1998), *abrogated on other grounds by State v. Valencia*, 169 Wn.2d 782, 239 P.3d 1059

(2010). But "[u]nlike polygraph testing, plethysmograph testing does not serve a monitoring

purpose." *Riles*, 135 Wn.2d at 345. Although plethysmograph testing may be used to treat sex

offenders, *see Riles*, 135 Wn.2d at 344, it is inappropriate "as a routine monitoring tool subject

---

[9] Two justices concurred in the vacation of the restitution order but dissented from the instructions to the sentencing court on remand. *Griffith*, 164 Wn.2d at 968, 972 (Madsen, J., concurring).

[10] We recognize that the 180-day period may be equitably tolled where (1) the defendant acts in bad faith, deceives the State, or gives false assurances, and (2) the State acts diligently. *State v. Duvall*, 86 Wn. App. 871, 875, 940 P.2d 671 (1997). But equitable tolling is not applicable here.

[11] Stoll does not challenge any kind of polygraph testing or plethysmograph testing ordered by a treatment provider.

No. 44265-5-II

only to the discretion of a community corrections officer." *State v. Land*, 172 Wn. App. 593,

605, 295 P.3d 782, *review denied*, 177 Wn.2d 1016 (2013).

The condition here is partially invalid. We vacate the portions of the community custody

condition that require Stoll to submit to plethysmograph testing at the discretion of the

community corrections officer. *See Land*, 172 Wn. App. at 606.

C.    *Alcohol-Related Conditions*

Stoll further challenges community custody conditions numbered 10, 12, and 30:

> (10)    The defendant shall not go into bars, taverns, lounges, or other places whose primary business [is] the sale of liquor;
>
> . . . .
>
> (12)    The defendant shall, at his/her own expense, submit to urinalysis and/or breathalyzer testing at the request of the [CCO] or treatment provider to verify compliance;
>
> . . . .
>
> (30)    The defendant shall not purchase, possess, or consume alcohol.

CP at 20-21.

Stoll argues that we should strike these conditions, except the prohibition on consuming

alcohol, because they are not crime related or otherwise authorized by statute. The State largely

concedes this point but claims that the trial court properly required Stoll to submit to urinalysis

or breathalyzer testing. We agree with the State.

Here, no evidence suggested that alcohol was related to Stoll's offenses, so these

conditions are not crime-related conditions authorized by RCW 9.94A.703(f). However, as Stoll

concedes, RCW 9.94A.703(3)(e) authorizes a sentencing court to order, as a condition of

community custody, that the offender "[r]efrain from consuming alcohol." Therefore, the

conditions requiring Stoll to submit to urinalysis or breath testing are appropriate as monitoring

conditions. *See Riles*, 135 Wn.2d at 342.

15

We vacate the conditions to the extent they prohibit Stoll from (1) entering bars, taverns, lounges, or other places whose primary business is the sale of liquor; and (2) purchasing or possessing alcohol. Thus, we vacate condition 10, and we partially vacate condition 30.

D.    *Use of the Internet*

Lastly, the trial court imposed a community custody condition stating,

> The defendant shall not use or access the internet (including via cellular devices) or any other computer modem without the presence of a responsible adult who is aware of the conviction, and the activity has been approved by the Community Corrections Officer and the sexual offender's treatment therapist in advance.

CP at 20. The State concedes that this condition is not crime related. Because the State is correct, we vacate the condition. *State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008).

## V. MOTION TO EXCUSE POTENTIAL JUROR FOR CAUSE

In his SAG, Stoll contends that the trial court erred by denying his motion to excuse a potential juror for cause due to alleged bias. We disagree.

Both the federal and state constitutions guarantee a criminal defendant the right to a trial by an impartial jury. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. To protect this right, a trial judge must dismiss a potential juror who cannot set aside preconceived ideas and serve as a fair and impartial juror. *State v. Gonzales*, 111 Wn. App. 276, 277-78, 45 P.3d 205 (2002); *see State v. Rupe*, 108 Wn.2d 734, 748-49, 743 P.2d 210 (1987).

Here, the trial court denied Stoll's motion to excuse juror number 25 for cause, but Stoll later used a peremptory challenge to excuse juror number 25. We need not decide whether the trial court erred because the use of a peremptory challenge to remove a juror who should have

been excused for cause cures any prejudice to the defendant. *Rupe*, 108 Wn.2d at 749-50. Thus, Stoll cannot show a violation of his right to a trial by an impartial jury.

## VI. SUFFICIENCY OF THE EVIDENCE

Stoll next asserts that the evidence is insufficient to support his convictions because the testimony was inconsistent and there was no physical evidence.[12] We disagree.

In a challenge to the sufficiency of the evidence, the defendant admits the truth of all the State's evidence; therefore, we consider the evidence and all reasonable inferences from it in the light most favorable to the State. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Further, circumstantial evidence and direct evidence are equally reliable. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

Given the applicable standard of review, Stoll's claim fails. Because the State's evidence must be regarded as true, inconsistent testimony does not undermine the sufficiency of the evidence.[13] Further, the absence of physical evidence is irrelevant because there was ample testimony to support Stoll's convictions.

## VII. VIDEOTAPED INTERVIEW

Stoll raises five grounds contending that the trial court erred by admitting Detective Stratton's videotaped interview with S.J. We disagree.

---

[12] Stoll does not identify any particular elements for which sufficient evidence was lacking.

[13] Stoll's SAG further states, "Hypothetical[l]y, if these heinous accusations were true, the alleged victim would not have simply went [sic] back to bed, as she testified, logically, she would have been in excruciating pain and needed, im[m]ediat[e]ly, to get medical attention." SAG at 1. But we determine the sufficiency of the evidence by reviewing the record, not by pondering hypotheticals.

No. 44265-5-II

First, Stoll asserts that the videotape was inadmissible because S.J. was available to testify. This appears to be a claim of evidentiary error.[14] But evidentiary error cannot be predicated on this ground because Stoll did not raise it in an objection in the trial court. ER 103(a).

Second, Stoll asserts that his right to confront the witnesses against him was violated because Detective Stratton was unavailable for cross-examination.[15] We disagree because Detective Stratton's videotaped statements were not testimonial. A testimonial statement is a solemn declaration or affirmation made to establish or prove some fact. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Although the questions Detective Stratton asked on the videotape were designed to elicit testimonial statements from S.J., Stoll does not claim that Detective Stratton made any testimonial statements herself. In the absence of testimonial statements from Detective Stratton, Stoll's claim fails.

Third, Stoll asserts that Detective Stratton vouched for S.J.'s credibility by asking S.J. during the videotaped interview whether she promised to tell the truth.[16] This was not vouching. Vouching occurs when an attorney (1) expresses a personal belief as to the veracity of a witness or (2) indicates that evidence not presented at trial supports a witness's testimony. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011). By asking S.J. to promise to tell the truth,

---

[14] S.J. testified that she remembered talking with Detective Stratton. Therefore, we do not understand Stoll to claim a confrontation clause violation.

[15] We review an alleged violation of the confrontation clause de novo. *State v. Jasper*, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).

[16] Stoll moved before trial to exclude the videotape on this ground.

18

Detective Stratton did not express a personal opinion or indicate that S.J.'s statements would be true. This claim fails.

Fourth, Stoll asserts that the videotape contained hearsay statements and the trial court failed to hold a hearing on its admissibility. This claim fails because the trial court considered the videotaped interview at a child hearsay hearing on the admissibility of S.J.'s hearsay statements.

Finally, Stoll asserts that the videotape was repetitive and inconsistent with in-court testimony. This appears to be an evidentiary claim based on ER 403. But Stoll did not object on this ground in the trial court and, therefore, this claim of evidentiary error fails. ER 103(a). Stoll fails to show that admission of the videotape was error.

## VIII. CONFLICT OF INTEREST

Stoll appears to assert that he received ineffective assistance of counsel because his counsel had a conflict of interest based on having previously represented S.J.'s mother. We do not consider this claim on appeal because it relies on facts outside the record.

The trial record does not disclose whether Stoll's counsel previously represented the victim's mother so as to create a conflict of interest. When an ineffective assistance claim relies on facts outside the trial record, a personal restraint petition is the appropriate means of making the claim. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We do not consider this claim on appeal.

IX. CLINICIAN'S TESTIMONY

Lastly, Stoll asserts that the clinician who examined S.J. testified to two statements that were not admissible under *Frye*[17] because they lacked general acceptance in the relevant scientific community. Specifically, Stoll asserts that the clinician improperly testified that (1) between 5 and 10 percent of sexual assault victims have abnormal results on a hymenal exam, which the clinician performed on S.J.; and (2) after being damaged, hymenal tissue heals rapidly and completely without scarring.[18] Stoll then argues that (1) the prosecutor committed misconduct by knowingly eliciting testimony that was at odds with the medical consensus; or, in the alternative, (2) his counsel was ineffective for failing to object based on *Frye*. We disagree because the clinician's testimony did not violate the *Frye* rule.

The *Frye* rule applies only where an expert's testimony relies on a *novel* theory, technique, or method. *Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 611, 260 P.3d 857 (2011). Stoll does not assert that the clinician's testimony relied on anything novel. The clinician was qualified to testify as an expert given her specialized training as a nurse, her experience treating child victims of sexual and physical assault, and her review of scientific literature. *See* ER 702. Therefore, the prosecutor did not commit misconduct by eliciting the clinician's testimony, and Stoll's attorney was not ineffective for failing to object.

---

[17] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923) (holding that scientific evidence is admissible only where it is based on methods that are generally accepted in the relevant scientific community).

[18] Stoll quotes two phrases, but we are unable to find these quotations anywhere in the record of the clinician's testimony.

No. 44265-5-II

CONCLUSION

We affirm Stoll's convictions and sentence, except we vacate the four challenged community custody conditions requiring Stoll to (1) pay for S.J. and her family to receive counseling, (2) submit to penile plethysmograph testing on the request of his community corrections officer, (3) refrain from entering bars or purchasing or possessing alcohol, and (4) refrain from unsupervised use of the internet. Accordingly, we remand to the trial court to enter a corrected judgment and sentence and take any further actions consistent with this opinion.

Affirmed in part, reversed in part.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Hunt, P.J.

_____
Melnick, J.

21